684 P.2d 307

Elwood **WING** and Naomi Wing, husband and wife, Plaintiffs, Counterdefendants, Respondents,

v.

**AMALGAMATED SUGAR COMPANY**, a Utah Corporation, Defendant, Cross-defendant, Respondent,

and

Jay **Hulet** and Gertrude Hulet, husband and wife, Intervenors, Defendants, Counter-claimants, Cross-claimants, Appellants.

No. 14142.

Court of Appeals of Idaho.

May 31, 1984.

Philip A. Peterson (Yost, White, Ahrens & Peterson, P.A.), Nampa, for intervenors, defendants, counter-claimants, cross-claimants, appellants.

G. Lance Salladay (Risch, Goss, Insinger & Salladay), Boise, for plaintiffs, counter-defendants, respondents.

BURNETT, Judge.

This case presents three issues: (1) Under what circumstances should a lawsuit be allowed to proceed when there is another, similar suit pending between the same parties in a different court? (2) When a farm lessee sells a crop grown under a crop-share lease, is the landowner entitled to insist that part of the sale proceeds be paid to him directly by the crop purchaser? (3) If the crop purchaser writes jointly payable checks to the landowner and lessee, does the owner's refusal to negotiate the checks—and his subsequent intervention in a suit by the lessee against the purchaser to compel issuance of separate checks—constitute unreasonable conduct, justifying an award of attorney fees to the lessee under I.C. § 12–121?

These issues are framed by a dispute between a farm owner (Hulet) and a lessee-grower (Wing) over the proceeds of a sugar beet crop. This dispute has spawned two lawsuits. The first, filed in Owyhee County by the lessee against the owner, deals broadly with a dispute over various expenses and losses related to farm operations. The Owyhee County suit is fully examined in *Wing v. Hulet*, 105 Idaho 912, 684 P.2d 314 (Ct.App.1984), a companion to the instant case.

The second lawsuit, resulting in the appeal now before us, was filed in Ada County while the first suit was still pending in Owyhee County. In the Ada County suit, the lessee sought judgment against the crop purchaser, Amalgamated Sugar, for the lessee's alleged share of the crop proceeds. The object of the suit was to compel the crop purchaser to pay the lessee a share of the proceeds by separate check rather than to pay the full amount by joint checks naming the landowner as an additional payee. The landowner intervened, asserting that the separate payment requested by the lessee did not correspond to his actual entitlement which—in the landowner's view—depended upon the outcome of the claims pending in Owyhee County. The crop purchaser—apparently maintaining a position of neutrality—filed no responsive pleading, and was content to pay as ultimately directed by the district court in Ada County. The court entered judgment as prayed by the lessee and awarded attorney fees against the intervening owner. For reasons explained below, we affirm the judgment but reverse the attorney fee award.

I

The threshold issue is whether the Ada County court should have allowed this case to proceed while the Owyhee County suit was pending. The landowner contends that the instant case should have been dismissed or stayed because there was "another action pending between the same parties for the same cause," within the meaning of I.R.C.P. 12(b). We disagree.

Initially, we note that the owner's reliance upon Rule 12(b), as a substantive ground for dismissal or for a stay, is misplaced. The rule is procedural, not substantive. It specifies the time and manner in which certain defenses must be presented. It does not, of itself, establish the validity of those defenses in particular cases; nor does it prescribe the action to be taken by the court if a defense mentioned in the rule is properly asserted.

The tests of whether a lawsuit should proceed in the face of a similar suit elsewhere, involving the same parties, are found in case law. The first test is whether the other pending case has gone to judgment. In that event, the doctrines of claim preclusion and issue preclusion may bar additional litigation. *See Aldape v. Akins*, 105 Idaho 254, 668 P.2d 130 (Ct.App.1983); *cf. Roberts v. Hollandsworth*, 101 Idaho 522, 616 P.2d 1058 (1980) (holding state court action precluded by federal court judgment). Here, the Owyhee County case had not gone to judgment when the instant case was filed and decided. Therefore, the Ada County court was not precluded from deciding any claim or issue presented to it.

■ The second test is whether the Ada County court—although not barred from deciding the case—nevertheless should have refrained from deciding it. A court may refrain from deciding a case when there is parallel litigation elsewhere. *See Farmer v. Boyd*, 89 Idaho 269, 404 P.2d 353 (1965); *Stevens v. Home Federal Savings & Loan Ass'n*, 5 Idaho 741, 51 P. 779 (1898). In the cases cited, the power to refrain from decision has been discussed with reference to an appellate review standard of "error," as though there had been only a single, permissible course of action in each case. However, we believe a right-or-wrong analysis is too simplistic. The determination of whether to proceed with a case, despite another action pending, is similar to a decision to consolidate cases involving common questions of law or fact, under I.R.C.P. 42(a), or to order separate trials of multiple claims or issues in the same case, under I.R.C.P. 42(b). These decisions are committed to the trial court's sound discretion. *See Rueth v. State*, 103 Idaho 74, 644 P.2d 1333 (1982); *Branom v. Smith Frozen Foods of Idaho, Inc.*, 83 Idaho 502, 365 P.2d 958 (1961). Analogous discretion inheres in a determination of whether a court represents a *forum non conveniens* for a claim or issue that better could be adjudicated elsewhere. *E.g., St. Louis-San Francisco Railway Co. v. Superior Court*, 290 P.2d 118 (Okl.1955).

■ Accordingly, we hold that the determination of whether to proceed with a case, when a similar case is pending elsewhere and has not gone to judgment, is discretionary. This determination will not be overturned unless discretion has been abused. In exercising such discretion, a trial court should evaluate the identity of the real parties in interest and the degree to which the claims or issues are similar. The court also may consider the occasionally competing objectives of judicial economy, minimizing costs and delay to the litigants, obtaining prompt and orderly disposition of each claim or issue, and avoiding potentially inconsistent judgments.

■ Here, the parties and claims in the two lawsuits overlapped, but were not precisely identical. In Owyhee County the parties were the landowner and lessee; in Ada County, the crop purchaser also was a named defendant. Although the purchaser filed no adversary pleading, it remained vitally interested in the outcome of the case. Its potential liability to each of the other parties, and the manner in which it should disburse the crop sale proceeds, were at issue. Moreover, the claims asserted in the two lawsuits were not entirely coextensive. In Owyhee County, the owner and lessee made claims against each other to recover expenses and losses related to farm operations. In Ada County, the lessee simply sued for separate disbursement of crop sale funds to him by the crop purchaser. He did not seek an adjudication of any amount owed him by the owner in connection with farm operations; nor did he seek an adjudication of the owner's claim against him. Although the owner, upon intervening in the Ada County case, sought a determination of these conflicting claims, the court correctly declined to reach them. An intervenor takes a case as he finds it. He is not entitled to raise new claims outside the scope of the original parties' pleadings. *See Anderson v. Ferguson*, 56 Idaho 554, 57 P.2d 325 (1936).

■ After the landowner intervened, the lessee asked the court to determine that the owner wrongfully had refused to en-

dorse the joint checks. The lessee subsequently made the same claim in Owyhee County; but he did not do so until the Ada County court had decided the instant case. Under these circumstances, we conclude that the Ada County court did not abuse its discretion by proceeding in this case to determine rights pertaining to disbursement of crop sale proceeds, but avoiding claims relating to farm operations, while the Owyhee County case was pending.

## II

We next turn to whether the court correctly decided the Ada County case on its merits. The court entered summary judgment, directing the crop purchaser to issue separate checks to the lessee and owner for percentage shares recited in the lessee's contract with the purchaser. Under that contract, the lessee-grower sold the entire crop, but the contract further provided:

> If the Grower is a tenant, his check in payment for beets may be made jointly to the landlord and tenant, unless previously thereto the landlord has made proper release in writing to the [purchaser].

The contract contained a handwritten notation that the lessee's share was 75%. When the court entered summary judgment, Amalgamated tendered 75% of the crop sale proceeds to the lessee, and 25% to the owner.

On appeal, the owner contends that there were genuine issues of material fact as to whether the 75/25 ratio corresponded to the parties' actual entitlements to the proceeds. He urges that this ratio was only the starting point for computing entitlements, and was subject to adjustment for various crop production expenses or losses. The owner further argues that the contract between the lessee and purchaser did not authorize a separate disbursement to the lessee without a release from the owner. We will examine these contentions in turn.

### A

It is, of course, axiomatic that summary judgment is improper when genuine issues of material fact exist. I.R.C.P. 56(c). However, not every factual issue, albeit genuine, is "material" to the outcome of a case. Here, the factual dispute between the lessee and the owner, concerning their respective entitlements to the crop sale proceeds, would have been material to the Ada County case only if the crop purchaser had been required to disburse the money in conformity with such entitlements. Therefore, the controlling question is whether such a requirement existed. This is a question of law, appropriate for disposition by summary judgment.

The contract between the lessee-grower and crop purchaser enumerated the rights and duties of these parties toward each other. This enumeration did not depend for its meaning upon whether a grower owned the land where the crops were raised. The only reference to the possibility of an owner different from the grower appears in the language, quoted above, providing that *if* the grower is a tenant the purchaser "may" issue jointly payable checks. This language imposes no obligation upon the purchaser to render any performance directly to a third-party owner.

Nevertheless, the owner urges that he was entitled, as a third-party beneficiary of the contract, to demand performance from the purchaser. This argument is faulty both in its premise and in its conclusion. The premise, that the owner was a third-party beneficiary, invokes application of I.C. § 29-102. This statute provides that "[a] contract, made expressly for the benefit of a third person, may be enforced by him at any time before the parties thereto rescind it." However, we deem it clear that the contract was not drawn "expressly for the benefit" of the owner. To the contrary, as noted above, the contract did not even contemplate the existence of a third-party owner except in its optional provision for issuing jointly payable checks. That provision plainly was designed not to benefit a landowner but to insulate the crop purchaser from challenge by the grower should the purchaser elect to issue joint checks for its own protection.

■ Moreover, the owner's conclusion is faulty because even if the owner were treated as a third-party beneficiary, he could demand no performance different from that provided by the contract itself. The contract contained no provision to pay the owner directly. *A fortiori*, the contract contained no requirement that the crop purchaser ascertain the owner's actual interest in the crop and pay him accordingly.

### B

■ In contrast, the contract did authorize the lessee-grower, as seller of the crop, to demand performance from the purchaser. This authority extended to the entire crop. The arrangement between the owner and lessee-grower was a lease of the farmland, not merely a cropping agreement. A cropping agreement gives the grower no more than a contractual interest in the crops grown. That interest is held in common with the landowner. Note, *Cropping Agreements*, 19 U.CIN.L.REV. 121 (1950); *see generally Peterson v. Conida Warehouses, Inc.*, 98 Idaho 883, 575 P.2d 481 (1978); *Washburn-Wilson Seed Co. v. Alexie*, 54 Idaho 727, 35 P.2d 990 (1934). However, a lease conveys an estate in land; and the lessee owns the crops he raises. J. CARTWRIGHT, FARM AND RANCH REAL ESTATE LAW 172 (1972). The landowner has a contractual interest in the rent he will receive for allowing the grower to use the land. The rent may be paid in a fixed sum of cash or with a share of the crop sale proceeds. In either event, the lessee is empowered to sell the crop and to collect the proceeds. The owner may protect his contractual interest in rent by obtaining a security interest in the crop or by inserting restrictive language into the lease. ·

■ In the present case, the record discloses no security interest or lease language restricting the lessee's authority to sell the crop. Having made the sale, the lessee was entitled to demand full payment from the purchaser, subject only to the purchaser's option of issuing joint checks.

The purchaser elected not to assert its right to exercise this option, after the lawsuit was filed. Because the lessee's request for separate checks was unresisted by the only party with standing to resist— the crop purchaser—the way was clear for the court to grant the lessee the relief sought. The lessee's request for payment of 75% of the sale proceeds, allowing payment of 25% to the owner, was well within his entitlement under the crop sale contract. The owner, who was entitled to nothing from the purchaser under that contract, had no grounds to insist that a release be procured from him prior to making such disbursements. Consequently, we find no error in the judgment of the Ada County court, directing payments to be made as requested by the lessee.

### III

After granting summary judgment, the Ada County court awarded attorney fees against the owner pursuant to I.C. § 12–121. This statute, as augmented by I.R. C.P. 54(e)(1), authorizes an award in any civil case "brought, pursued or defended frivolously, unreasonably or without foundation." The court explained the fee award in this case by declaring that "the action of the Intervenor [landowner] was a deviation from reasonable standars [sic] of conduct and was brought and pursued frivously [sic] and unreasonably." The court further stated that "the efforts of the Intervenor in this action constitute an improper illegal attachment, attempting to secure the outcome of the lawsuit between he [sic] and the [lessee], currently pending in Owyhee County." When asked to reconsider, the court reaffirmed its ruling, awarded additional fees upon the motion for reconsideration, and stated that "there is no legal basis for [the landowner's] attempt to utilize this action to obtain leverage against the [lessee] for payment of debts claimed to be due."

■ An award of attorney fees under I.C. § 12–121 is discretionary; but it must be supported by findings and those findings, in turn, must be supported by the

record. *Bosshardt v. Taylor*, 104 Idaho 660, 662 P.2d 241 (Ct.App.1983). In this case the court's findings contain a mixture of a legal conclusion and the judge's subjective impression of the landowner's motive for litigating this case.

Whether the landowner undertook "an improper illegal attachment" is a question of law. On that point we believe the court erred. An attachment is generally defined to mean "[t]he act or process of taking ... property, by virtue of a writ, summons, or other judicial order, and bringing the same into the custody of the court for the purpose of securing satisfaction of the judgment ultimately to be entered in the action." BLACK'S LAW DICTIONARY 115 (rev. 5th ed. 1979). Here, the landowner sought no order taking property from the lessee or placing it in custody of the court. Although the crop purchaser's checks were delivered to the court, this action was taken voluntarily by the lessee—not upon court order nor upon any demand by the landowner. The landowner simply declined to endorse the joint checks. We have not been cited, and our research does not disclose, any authority holding that such refusal constitutes an illegal attachment. We decline to so hold.

We next turn to the judge's statements that the landowner deviated from reasonable standards of conduct and attempted to obtain leverage against the lessee. These statements embody a view of the case emphatically urged by the lessee's counsel, but they lack support of any factual showing in the record. Rather, the record shows that the landowner and lessee disputed their obligations to each other; the owner took the position that the parties were entitled to receive shares of the crop sale proceeds corresponding to their actual entitlements vis-a-vis each other. Consistent with this position, the owner refused to sign the joint checks and later intervened to protect what he perceived to be his interest when the lessee sued the purchaser for separate payments. We have held that the landowner's position was in error. However, this does not mean that the owner deviated from reasonable standards of conduct or exploited this case for leverage.

A misperception of law or of one's interest under the law is not, by itself, unreasonable conduct. If it were, virtually every case controlled by a question of law would entail an attorney fee award against the losing party under I.C. § 12–121. Rather, the question must be whether the position adopted by the owner was not only incorrect but so plainly fallacious that it could be deemed frivolous, unreasonable or without foundation. In this regard it is noteworthy that the crop purchaser—a major sugar company—viewed the landowner's position with great caution and issued separate payment to the lessee only when sued and compelled by judgment to do so. Moreover, our opinion today elucidates the differences between a cropping agreement—upon which the landowner's position might have been correct—and a crop-share lease. Finally, the owner's intervention in this case raised the question whether the Ada County court should have dismissed or stayed this case, rather than proceeding while the Owyhee County case was pending. Although these questions have been decided adversely to the owner, the issues were genuine and fairly debatable. Accordingly, we conclude that failure to negotiate the joint check, and subsequent intervention in this lawsuit, did not justify a fee award under I.C. § 12–121.

The summary judgment is affirmed, but the award of attorney fees at trial is reversed. No attorney fees on appeal. Costs to respondent, Wing.

WALTERS, C.J., and SWANSTROM, J., concur.