733 P.2d 721

**NBC LEASING COMPANY and Lease Northwest, Inc., Plaintiffs,**

v.

**R & T FARMS, INC., Ray Douthit, Thirza Lou Douthit; Richtron Financial Corporation; Utah Mortgage Loan Corporation; and Northwestern National Life Insurance Company, Defendants.**

**NORTHWESTERN NATIONAL LIFE INSURANCE COMPANY, a corporation, Plaintiff-appellant,**

v.

**C. Bruce YOUNG; and Western Seeds, Inc., Defendants-respondents,**

**and**

**Ray Douthit and Thirza Douthit, Defendants.**

**No. 16424.**

Supreme Court of Idaho.

Feb. 13, 1987.

W.A. Parsons, of Parsons, Smith, Stone and Fletcher, Burley, for plaintiff-appellant (Northwestern).

Alfred E. Barrus, Burley for defendant-respondent (C. Bruce Young).

Brent T. Robinson, Rupert for defendant-respondent (Western Seeds).

HUNTLEY, Justice.

Northwestern National Life Insurance Company appeals the trial court's grant of summary judgment for defendants, C. Bruce Young and Western Seeds, Inc.

In the instant case, owner/landlord (Northwestern) entered into a share-crop lease with farmer/tenant (Douthit) whereby the owner/landlord would take one-third of the crop. C. Bruce Young and Western Seeds, Inc. supplied seed, fertilizer and money enabling Douthit to raise the crop, they taking and filing a security interest in the crop. The issue on appeal is whether, under such an arrangement, the suppliers have received an interest in the owner/landlord's one-third share of the crop. We hold they have not.

In 1982, Northwestern purchased a parcel of property, located in Cassia County, Idaho, at a sheriff's foreclosure sale. (The land had previously been owned by Ray Douthit, a farmer, and later, Richtron Corporation). Both prior and subsequent to Richton Corporation's default under the mortgage, Ray Douthit farmed the land.

After the foreclosure sale, Northwestern and Douthit entered into a verbal agreement whereby Douthit would farm the land and be responsible for all crop expenses. Northwestern would provide irrigation water, and the crop would be divided one-third to Northwestern and two-thirds to Douthit.

This agreement was confirmed in a letter from Northwestern to Douthit, dated April 8, 1982. Northwestern did not file a security interest in the crop.

In order to obtain financing for the 1982 season, Douthit subleased the property to C. Bruce Young, who was able to obtain financing from a bank. Douthit had also incurred a debt to Western Seed Company for seed and fertilizer supplied for the 1982 crop.

During the 1982 season, Douthit grew both grain and potatoes. The potato crop spoiled because of lack of a market. The grain was delivered in part to Western Seed, and applied toward the debt Douthit owed, and in part to Union Seed Company (not a party) for an obligation owed them. The grain delivered to Union Seed was sold, and the proceeds paid to Young, who, in turn, used the proceeds to repay the bank and retire the operating loan.

Northwestern filed suit against C. Bruce Young, Western Seeds, Inc. and Roy and Thirza Douthit to compel delivery of its portion of the 1982 crop, or the monetary equivalent of such. (The Douthits are not parties to this appeal.) The trial court granted summary judgment in favor of C. Bruce Young and Western Seeds, Inc., relying upon the recent Court of Appeals Opinion, *Wing v. Amalgamated Sugar Co.,* 106 Idaho 905, 684 P.2d 307 (Ct.App.1984). *Wing* differentiated between cropping agreements and lease arrangements between owners and growers, and stands for the proposition that a lease conveys an interest in land with the lessee owning the crop which he raises upon such land.

The cropping agreement gives the grower no more than a contractual interest in crops grown. That interest is held in common with the landowner. Note, Cropping Agreements, 19 U.Cin.L.Rev. 121 (1950); *see* generally *Peterson v. Conida Warehouses, Inc.,* 98 Idaho 883, 575 P.2d 481 (1978); *Washburn-Wilson Seed Co. v. Alexie,* 54 Idaho 727, 35 P.2d 990 (1934). However, a lease conveys an estate in land; and the lessee owns the crops he raises. J. CARTWRIGHT,

FARM AND RANCH REAL ESTATE LAW, 172 (1972). The landowner has a contractual interest in the rent he will receive for allowing the grower to use the land. The rent may be paid in a fixed sum of cash or with a share of the crop sale proceeds. In either event, the lessee is empowered to sell the crop and to collect the proceeds. The owner may protect his contractual interest in rent by obtaining a security interest in the crop or by inserting restrictive language into the lease. *Wing*, 106 Idaho at 910, 684 P.2d at 312.

The trial court found that the verbal agreement between Douthit and Northwestern was more properly viewed as a lease of land and, under the analysis of *Wing*, ruled that Northwestern could not recover from Western Seed or C. Bruce Young either the portion of the crop or the moneys paid them by Douthit, since Northwestern had neither obtained a security interest in the crop nor inserted restrictive language into a written lease.

Respondents urge us to affirm the trial court and the analysis in *Wing*, noting that a failure to do so will place an unacceptable onus upon farm suppliers, particularly those who have provided the essentials in enabling the farmer to raise a crop, to check both UCC filings and real estate records prior to extending credit to growers.

This Court's last opinion addressing this issue was *Peterson v. Conida Warehouses, Inc.*, 98 Idaho 883, 575 P.2d 481 (1978). In *Peterson*, a farm owner brought an action against the buyer of the tenant farmer's bean crop to recover the owner's share pursuant to a share-crop lease. In that case, we framed the issue as being:

"[w]hether in the absence of any land title in the [tenant farmers], they nevertheless were able to transfer title to [the landowners'] share of the bean crop." 98 Idaho at 884, 575 P.2d at 482.

We held they could not. We acknowledged an existing landlord/tenant relationship in *Peterson*. We also acknowledged the sanctity of the landlord's proprietary interest in crops grown on his land and asserted that, while one extending credit to a tenant farmer has valid contractual rights against the farmer, those rights do not extend as against the landlord. In his special concurrence, Justice Bakes stated:

The farmer's land, water, fertilizer and labor produces a product so transformed and so enhanced that title to the resultant crop should belong to the farmer. The seed company, of course, would retain contractual rights against the farmer. *However, these rights do not give the seed company any claim to the crop itself, particularly as against the rights of a share-crop landlord, whose proprietary interest would arise concurrently with that of his farmer-tenant.* 98 Idaho at 886, 575 P.2d at 484. (Emphasis added).

To allow a tenant/farmer to subordinate the owner's interest to a third party in such a way would be, in effect, to allow the tenant/farmer to alienate the owner's interest in part of his property without his consent. We would, in effect, be condoning the transformation of a landlord's proprietary interest in a crop grown on his land to a mere security interest. This we will not do.

Respondents urge that *Wing* and *Peterson* are fully reconcilable and distinguishable, as *Wing* addressed a lease situation, while *Peterson* merely addressed a cropping agreement situation. *Wing*, in fact, cites to *Peterson* as an example of a cropping agreement. We, however, cannot harmonize the two cases. In *Peterson*, we specifically noted that the interested parties were landlord and tenant, and that a lease situation was involved. As already stated, we premised that opinion upon our belief in the sanctity of an owner's title to his property.

Respondent (landlord) herein being a co-owner of any crops to be grown upon his land, his co-tenant, the lessee, can make no contract with appellant (seed company) affecting his title to such one-third interest.... *Peterson*, 98 Idaho at 885, 575 P.2d at 483, quoting from *Washburn-Wilson v. Alexie*, 54 Idaho 727, 730, 35 P.2d 990, 993 (1934).

Moreover, *Peterson* fully comports with all of this Court's prior case law.

[W]hether the agreement be a lease or a cropping contract, ... it is of no consequence that the agreement be denominated a "lease" and the share to be delivered "rental." The reasoning is that the parties intended that the occupier of land, whether he be called tenant, cropper, servant or contractor, shall deliver to the landowner, not a sum of money equal to the value of the share of the crop, but the particular portion of the crop he agreed to deliver; that the owner of the land is entitled to receive a particular share or portion of the crops produced on his land and is not merely the holder of a claim or demand against the occupier, for a sum equal to the value of a particular portion or share of the crop at the time and place of delivery, to be enforced by the recovery first of a personal judgment. *Devereaux Mortgage Co. v. Walker*, 46 Idaho 431, 436, 268 P. 37, 39 (1928). (See also, *Washburn-Wilson v. Alexie*, 54 Idaho 727, 35 P.2d 990 (1934); *Federal Land Bank of Spokane v. McCloud*, 52 Idaho 694, 20 P.2d 201 (1933)).

Finally, respondents urge the equitable argument that Western Seeds, Inc. and C. Bruce Young provided necessities, without which no crop could have been raised and should, therefore, be entitled to payment therefor. However, it is equally true that the crop could not have been produced without the land supplied by the landowner. While respondents clearly do have a strong interest in receiving remuneration for services provided (and a claim against the Douthits), we decline to find that their interest in payment for services supplants Northwestern's landowner's interest in the crop.

To the extent that *Wing* conflicts with *Peterson, supra,* and our holding today, it is overruled.

Reversed and remanded for proceedings consistent herewith. Costs to appellant, no attorney fees awarded.

SHEPARD, C.J., and BAKES and BISTLINE, JJ., concur.

DONALDSON, Justice, dissenting.

I dissent. I would affirm the trial court's holding for the defendants on the basis that the agreement between the plaintiff, Northwestern National Life Insurance Company, and the defendants, Ray Douthit and Thirza Douthit, was a lease of real estate and, therefore, the case of *Wing v. Amalgamated Sugar Co.,* 106 Idaho 905, 684 P.2d 307 (Ct.App.1984), applies. The district judge so ruled based on his finding as to the intent of the parties as shown by the depositions filed in the case.