693 P.2d 1092

**GULF CHEMICAL EMPLOYEES FEDERAL CREDIT UNION,**
Plaintiff-Appellant,

v.

**Rick WILLIAMS,**
Defendant-Respondent,

and

**William R. Payne, Defendant.**

No. 14772.

Court of Appeals of Idaho.

Dec. 28, 1984.

892

A. Bruce Larson, Soda Springs, for plaintiff-appellant.

Ronald J. Jarman, Pocatello, for defendant-respondent.

BURNETT, Judge.

This lawsuit arises from a lender's failure to perfect its security interest in collateral. Gulf Chemical Employees Federal Credit Union made a loan to William Payne for the purpose of buying a used car from Rick Williams. The lender did not receive a document of title to the automobile. For that reason the lender was unable to perfect a security interest in the manner required by I.C. § 49–412. The borrower later defaulted on the loan and apparently disposed of the car. The frustrated lender filed this suit not only against the borrower but also against the seller upon a theory that both of them had breached a duty to deliver the title. The district court entered summary judgment, and awarded attorney fees, in favor of the seller. For reasons explained below, we affirm the judgment but set aside the district court's award of attorney fees.

I

The lender's theory of recovery from the seller rested entirely upon a notice imprinted on the back of a loan disbursement check, with blank spaces completed by typewritten entries. The language of the notice was as follows:

> This check represents the proceeds of a loan. You are obligated to furnish a negotiable title to the vehicle or mobile home: Description 1979 AMC Jeep I.D. #J8F83EH132729 within thirty days after endorsement of this check. Failure to furnish a negotiable title will constitute liability for any expense required to procure.

The check was payable jointly to the borrower and the seller. Each of them indorsed it, the borrower's signature appearing above that of the seller. The check constituted the sole contact by the lender

with the seller. There was no direct communication between them.

The lender asserted that the indorsed check represented a contract obligating the seller to ensure delivery of a document of title to the lender. The seller responded that the borrower had obtained the title and that the borrower alone was responsible for the lender's loss. The lender and seller both moved for summary judgment. The district court ruled in the seller's favor on two grounds—that the check did not create a contract between the lender and the seller, and that even if such a contract existed, the seller performed his obligation by furnishing title to the borrower.

On appeal the lender has argued that when the check is viewed in the context of the transaction, and when all inferences are drawn in the lender's favor, a contract between the lender and the seller has been established. The lender also contends that the district court, in finding that the seller furnished title to the borrower, relied upon an affidavit containing hearsay information precluded by I.R.C.P. 56(e). However, we need not reach the latter contention. In our view, the question concerning existence of a contract is dispositive.

Before addressing this question, we note several limitations upon the scope of our inquiry. First, although the seller's liability has been predicated upon language added to a check, there is no issue concerning the check's validity as a negotiable instrument. The check was in fact negotiated by the named payees and it was honored by the bank on which it was drawn. Second, despite the parties' occasional references in briefs and oral argument to "restrictive indorsements," no special rules governing such indorsements apply to this case. The language on the back of the check was put there by the maker, not by any indorser, and it relates solely to a purported obligation other than payment of the check. Therefore, the obligation, if any, created by such language turns upon the general law of contract.

Finally, this case was submitted to the district court on cross-motions for summary judgment. Both motions presented the same issue, and were grounded upon the same theories, as far as the existence of a contract between the lender and the seller was concerned. Consequently, the parties effectively stipulated that there were no disputes of material fact on the contract issue. *Riverside Development Co. v. Ritchie*, 103 Idaho 515, 518–19 n. 1, 650 P.2d 657, 660–61 n. 1 (1982). Moreover, no jury trial had been requested. Thus, the district court was at liberty to draw whatever inferences it deemed most probable from the uncontroverted facts. *Id. See also Argyle v. Slemaker*, 107 Idaho 668, 691 P.2d 1283 (Ct.App.1984).

The question, then, is narrowed to the application of contract law to undisputed facts. It long has been settled that no enforceable contract exists unless it reflects a meeting of the minds and embodies a distinct understanding common to both parties. *E.g., Phelps v. Good*, 15 Idaho 76, 96 P. 216 (1908). The contract must be specific enough to show that the parties shared a mutual intent. *Barnes v. Huck*, 97 Idaho 173, 540 P.2d 1352 (1975). In general, a contract also must create a mutuality of obligation. *Green v. Beaver State Contractors, Inc.*, 93 Idaho 741, 472 P.2d 307 (1970).

The district court ruled, and we agree, that the requisites for an enforceable contract have not been established in this case. The language imprinted on the check fails to specify what obligation, if any, is imposed on the seller. It recites only that "[y]ou are obligated to furnish negotiable title to the vehicle ...." It does not identify the party addressed by the term "you" and it does not state to whom the title must be delivered. This vague language, unaccompanied by any other communication between the lender and seller, fails to show a meeting of the minds or a distinct understanding common to both parties. We cannot discern any mutual intent shared by the seller and the lender. Neither does the imprinted language provide a mutuality of obligation.

The lender undertook nothing, and did nothing, specifically for the seller. The lender simply disbursed a loan pursuant to an existing agreement with the borrower.

 Of course, the lack of separate consideration for the seller would not be fatal if the imprinted language created an otherwise valid guaranty agreement. In such an agreement the extension of credit to a debtor is deemed sufficient consideration for the guarantor. *Bank of Idaho v. Colley,* 103 Idaho 320, 647 P.2d 776 (Ct. App.1982). But the language on the check in this case does not rise to the level of a guaranty agreement. Although no particular wording is necessary to create a guaranty, it must satisfy the fundamental requisites of mutual understanding and definiteness applicable to any contract. *See cases cited in* 38 AM.JUR.2d *Guaranty* §§ 5, 26, 37 (1968). Moreover, our Supreme Court has declared that even where valid guaranty agreements exist, they must be strictly construed and not extended beyond the express limits of the instruments creating them. *Industrial Investment Corp. v. Rocca,* 100 Idaho 228, 596 P.2d 100 (1979). *A fortiori,* no guaranty agreement can be created by the express terms of an instrument that falls short of establishing the requisites of a valid contract.

The lender argues that any indefiniteness in the language imprinted on the check can be resolved by inferences drawn from the circumstances of the transaction. The lender urges that the district court erred by failing to infer that the word "you" was intended to be plural, embracing both the borrower and the seller, and that the phrase "furnish a negotiable title" was intended to mean delivery of the title to the lender. We are unpersuaded. As noted above, the district court was freed, under *Riverside Development Co. v. Ritchie, supra,* from any constraint to draw inferences favoring the lender. We find no error in the district court's refusal to infer that the parties mutually intended the imprinted language to apply to the seller, or that the parties mutually understood the furnishing of title to mean a delivery to the lender.

These inferences would have been inconsistent with the boilerplate format of the imprinted language and with the lack of any direct communication between the seller and the lender. The inferences also would have been contrary to the narrow view of guaranty agreements announced in *Rocca.* We conclude that the seller had no contractual obligation to deliver a document of title to the lender.

## II

 The lender also challenges the district court's award of attorney fees to the seller. The award was based upon I.C. § 12–121 and I.R.C.P. 54(e)(1). The court found that no material facts were disputed and that "this action was brought ... without merit and in a frivolous attempt to obtain judgment without any legal reason." We are troubled by this conclusory finding. It informs us only that the law, in the judge's view, did not support the lender's claim. But a claim is not necessarily frivolous or lacking in merit simply because it ultimately fails as a matter of law. Rather, the question is whether the claim, when made and pursued, is so plainly fallacious that it can be termed frivolous, unreasonable or without foundation. *See Wing v. Amalgamated Sugar Co.,* 106 Idaho 905, 684 P.2d 307 (Ct.App.1984).

Here, the central issue presented to the district court was whether an obligation recited in language imprinted upon a jointly payable check was binding upon both payees. The lender's claim against the seller might have succeeded, and it surely would have survived a motion for summary judgment, if the district court had drawn favorable inferences concerning the meaning and intent of the imprinted language. The court elected not to draw those inferences, and we have upheld that choice—relying, in part, upon *Ritchie.* However, *Ritchie* had not been decided when the summary judgment was entered in this case. Prior to *Ritchie,* the standards governing the treatment of disputed facts and inferences, on cross-motions for summary judgment, were not entirely clear. *See Moss v.*

*Mid-America Fire and Marine Insurance Co.,* 103 Idaho 298, 647 P.2d 754 (1982).

Consequently, we believe the lender's claim, and the lender's asserted right to favorable inferences, were fairly debatable when this case was pending in district court. They were not plainly fallacious. We are, of course, mindful that an award of attorney fees under I.C. § 12–121 rests within the sound discretion of the district judge. *Anderson v. Ethington,* 103 Idaho 658, 651 P.2d 923 (1982). But when a fairly debatable claim is deemed frivolous for no stated reason other than its ultimate failure upon a point of law, we believe discretion has been abused. Therefore, we reverse the award of attorney fees below.

This brings us to the final question—whether attorney fees should be awarded on appeal. The outcome of this question is not determined by our reversal of the district court's award. The posture of a case on appeal may differ significantly from its posture in the district court. An award may be justified on appeal regardless of the lack of an award below. *See Everett v. Trunnell,* 105 Idaho 787, 673 P.2d 387 (1983).

Weighing the issues raised and decided today, we deem it clear that the seller is the prevailing party on appeal. It is also clear that the chief impediment to upholding the district court's award of attorney fees—the uncertainty of standards governing cross-motions for summary judgment before *Ritchie*—does not inhibit an award on appeal. Although the summary judgment preceded *Ritchie,* this appeal was filed after *Ritchie.* The lender's asserted right to favorable inferences evaporated when *Ritchie* was decided. The purported contract between the lender and seller no longer represented a fairly debatable issue.

In light of *Ritchie* and the other well-settled authorities governing this appeal, we hold that no genuine issue of law, or error in the application of law to the undisputed facts, has been presented. Accordingly, we award attorney fees on appeal under I.C. § 12–121. *See Christensen v. Idaho Land Developers, Inc.,* 104 Idaho 458, 660 P.2d 70 (Ct.App.1983).

The judgment of the district court, except as to attorney fees, is affirmed. Costs and attorney fees on appeal, as determined under I.A.R. 41, are awarded to respondent, Rick Williams.

WALTERS, C.J., and SWANSTROM, J., concur.