720 P.2d 632

**Bernetta WATSON,
Plaintiff-Respondent,**

v.

**IDAHO FALLS CONSOLIDATED
HOSPITALS, INC., and Sandra
Covert, Defendants-Appellants.**

No. 15840.

Supreme Court of Idaho.

June 2, 1986.

Lary S. Larson, Idaho Falls, for defendants-appellants.

Dean Charles Brandstetter and John Ohman (argued), Idaho Falls, for plaintiff-respondent.

SHEPARD, Justice.

This is an appeal from a judgment entered following a jury trial and verdict in favor of plaintiff-respondent Watson in her action for wrongful discharge from employment and from denial of a motion for judgment notwithstanding the verdict. We *affirm.*

Watson was hired as a nurse's aide by defendant-appellant Idaho Falls Consolidated Hospitals, Inc., in 1975. Although Watson was given an employee handbook when she was hired, no written employment contract was executed. During her employment Watson became eligible for and received medical, life and long-term disability insurance, sick leave, vacation and retirement benefits. She received yearly pay increases, and reviews of her job performance resulted in average and above-average evaluations. In 1978 Watson became a hospital ward clerk. In 1979 a number of hospital employees, including Watson, organized in an attempt to unionize the hospital. The hospital opposed such unionization, but Watson actively supported the efforts. An election was held and a majority of the employees rejected the attempt to unionize the hospital.

Watson testified that during the course of the attempt to unionize the hospital, head nurse Covert advised Watson to discontinue the union activity or Watson would lose her job. The National Labor Relations Board held hearings at which Watson reported the statement allegedly made by Covert. Watson testified that Covert again made threats regarding Watson's termination. Covert testified that she was unaware of Watson's testimony at the NLRB hearings, and denied ever threatening Watson with termination.

Some time in mid–1983 the hospital held an employees meeting at which time a revised edition of the handbook was delivered to all employees, including Watson. All employees were required to sign an acknowledgment of receipt of this revised handbook which explained hospital policy, discipline, counseling and termination. A policy and procedures manual was placed on each floor of the hospital which also outlined termination procedure. Ten categories of misconduct are listed which would result in immediate dismissal, including intentional falsification of business records.

Watson had been placed on probation from July to October 1983 due to an excessive number of absences. On November 22, 1983 Watson was terminated on the basis that she had falsified her employment time records. That accusation related to events of November 14. On that day Watson was scheduled to work a regular shift from 7:00 a.m. to 3:30 p.m., but called in sick and asked to be placed "on call" for that shift. According to the hospital Watson was not placed "on call" but rather another employee was called in to cover five hours of Watson's shift. It is not disputed that Watson was absent the entire shift.

The remainder of the testimony was sharply controverted, but the jury was free to, and obviously did, accept the Watson version of the events which followed. Watson testified that she met with her immediate supervisor, Covert, who was to pick up Watson's "justification sheet," which is a handwritten form used to report working hours not properly recorded in the hospital's computerized time clock system. Watson testified that she complained to Covert that she, Watson, should have been called into work on November 14, but another worker was called. Watson testified that in order to make her point to Covert,

she wrote on her justification sheet that she was on call eight hours, and was called in five hours on November 14. Watson testified that Covert then stated that Watson had just "hung [herself] with that union stuff." According to Watson's testimony, Covert walked away with the justification sheet although Watson asked Covert to remove the entry since it had only been made for illustration purposes. Covert's testimony was sharply contradictory, indicating no such explanation from Watson, but that Watson had falsified the time entries to indicate Watson's working five hours on November 14. After receiving employee "justification sheets," supervisors fill out "time and attendance" summaries for each employee, and it is undisputed that Covert indicated on Watson's time and attendance summary that Watson had worked five hours on November 14, 1983.

As indicated above, Watson was terminated and thereafter filed action against the hospital and Covert individually, alleging wrongful discharge, that her termination was accomplished without taking steps to rehabilitate or salvage her employment, that Covert had intentionally interfered with her employment relationship with the hospital, that both defendants had intentionally inflicted emotional distress upon Watson, and that the accusations prior to discharge constituted slander.

Defendants made a motion for summary judgment which was granted in part as to the claims for slander and interference with contractual relations. No appeal was taken from that partial summary judgment, and hence no issue is presented herein. A jury trial was held upon the two remaining issues. The jury found for the defendants on the emotional distress claim. No appeal is taken therefrom, and hence no issue on that claim is presented herein. The jury found in favor of Watson, and against the hospital, for breach of contract resulting in wrongful discharge, and awarded damages therefor in the amount of $20,000.00. The hospital moved for judgment notwithstanding the verdict, and requested alternatively that Watson's damages be reduced to the actual pretrial pecuniary losses. Those motions were denied. Covert is not a party to the appeal since the jury verdict was in favor of the defendants on the issue of intentional infliction of emotional distress.

■■■ The hospital first argues that the district court erred in failing to grant it summary judgment on all of Watson's claims, asserting that there was no showing of a contractual agreement which limited the hospital's right to discharge plaintiff at will. The hospital would thus have us review the order denying in part its motion for summary judgment as a subcomponent of its appeal from the final judgment. We decline to do so. An order denying a motion for summary judgment is not a final order, and a direct appeal ordinarily cannot be taken from it. *Wilson v. DeBoard*, 94 Idaho 562, 494 P.2d 566 (1972). *Compare with Bluestone v. Mathewson*, 103 Idaho 453, 649 P.2d 1209 (1982). An order denying a motion for summary judgment is not reviewable on appeal from a final judgment. *Evans v. Jensen*, 103 Idaho 937, 655 P.2d 454 (Ct.App.1982). The review of a judgment entered upon a jury verdict should not be limited to the facts as they were developed at the time of the motion for summary judgment. *See Vincen v. Lazarus*, 93 Idaho 145, 456 P.2d 789 (1969) (McFadden, J. and Donaldson, J. concurring specially).

The hospital next asserts that the district court erred in failing to instruct the jury on the requirements for proof of the existence of a contract, the construction of a contract, and ambiguity in a contract. We here note that Watson's case at trial was that the hospital had become contractually bound by written statements contained in its handbook and its manual, as well as by oral statements, to the effect that Watson's employment would continue unless and until she violated the rules and procedures of the hospital, or did not perform her job. The district court agreed that Watson had so carried her burden of proof and instructed the jury that a contract of employment did exist between the plaintiff and the hos-

pital. The hospital's defense at trial was that Watson intentionally falsified her time records without either excuse or explanation. The district judge correctly instructed the jury as to the contention of the hospital in that regard. On appeal, however, the hospital now asserts that no such contract of employment existed which prohibited the hospital from terminating Watson's employment without reason, in accordance with the employment-at-will doctrine.

Employment is at the will of either employer or employee, and the employer may terminate the relationship at any time for any or no reason without incurring liability, except or unless an employee is hired pursuant to a contract which specifies the duration of the employment or limits the reasons for which an employee may be discharged. *MacNeil v. Minidoka Memorial Hospital,* 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977). An employee at will may not, however, be discharged for a reason contravening public policy. *MacNeil, supra; Jackson, supra.* In the case at bar the district court correctly found that the hospital manual and the employee handbook were part of the employment contract, and that the reasons for which Watson could be terminated were limited by those documents.

The employee handbook provided in pertinent part:

"3. TERMINATION BY DISCHARGE. Termination may occur from infractions of accepted standards of performance or failure to adhere to hospital or department policy."

The handbook as to conduct which "may result in immediate discharge," provides in pertinent part:

"ACTIONS WHICH MAY RESULT IN IMMEDIATE DISCHARGE

.     .     .     .     .

"B. Intentional falsifications of records required in the transaction of business."

Neither the handbook nor the manual expressly or by fair inference provide for discharge without cause.

We hold that the district court did not err in instructing the jury that a contract did exist.

This Court, in *Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283 (1986), recently held that an employee handbook can constitute an element of the employment contract and that "at a minimum this was a question of fact for the jury to decide." A jury question is presented when the existence of a contract is in issue and the evidence is conflicting or admits of more than one inference. *Harkness, supra, quoting Jackson v. Minidoka Irrigation Dist.,* 98 Idaho 330, 563 P.2d 54 (1977). Hence, if the existence of the contract is not disputed or the evidence of the contract is not conflicting and admits of but one inference, the court may address the issue of the existence of a contract as a matter of law.

Here, the evidence demonstrated that the employee handbook and policy and procedure manual were more than just employee and management "guides." Both documents concededly were compiled by the hospital and adhered to by both employees and management. The director of nursing services and the director of human resources testified that the policies and procedures were intended to be enforced and complied with by both management and employees. Watson testified that she and other employees read and relied upon the handbook as creating the terms of her contract of employment. The distribution of the handbooks to employees, and the requirement of employees' signatures to establish receipt of the handbook also signifies their importance as contract documents. *See Woolley v. Hoffmann-La-Roche, Inc.,* 99 N.J. 284, 491 A.2d 1257 (1985), *modified on other grounds,* 101 N.J. 10, 499 A.2d 515 (1985).

In *Woolley* the court held that absent a clear and prominent disclaimer an implied promise contained in an employment manual that an employee will be fired only for

cause was enforceable against the employer, and also held that the court, in a jury trial, may make the determination as to whether employee handbook provisions are binding.

■The hospital, nevertheless, argues that basic contract law requires a meeting of minds, a distinct understanding common to both parties, a mutual intent, and the creation of a mutuality of obligation. *See Gulf Chemical Employees v. Williams,* 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984). Thus, the hospital asserts that the documents at issue here cannot constitute a contract because they lack mutuality of obligation.

The standard test for finding a *bilateral* contract between two parties is whether or not there is "mutuality of obligation." *Green v. Beaver State Contractors, Inc.,* 93 Idaho 741, 472 P.2d 307 (1970). However, a contract of the type at issue in this case constitutes a unilateral contract. *See Anthony v. Jersey Central Power and Light Co.,* 51 N.J.Super. 139, 143 A.2d 762 (App.1958). The court in *Woolley v. Hoffmann-LaRoche, Inc., supra,* a case with facts parallel to the instant case, held that traditional contract analysis is inadequate to deal with the realities of the work place, stating:

"Thus analyzed, the manual is an offer that seeks the formation of a unilateral contract—the employees' bargained-for action needed to make the offer binding being their continued work when they have no obligation to continue.

"The unilateral contract analysis is perfectly adequate for that employee who was aware of the manual and who continued to work intending that continuation to be the action in exchange for the employer's promise; it is even more helpful in support of that conclusion if, but for the employer's policy manual, the employee would have quit. *See generally* M. Petit, 'Modern Unilateral Contracts,' 63 B.U.L.Rev. 551 (1983) (judicial use of unilateral contract analysis in employment cases is widespread)."

*Accord Gronlund v. Church and Dwight Co., Inc.,* 514 F.Supp. 1304, 1309–1310 (S.D.N.Y.1981); *Toussaint v. Blue Cross & Blue Shield,* 408 Mich. 579, 292 N.W.2d 880 (1980); *Pine River State Bank v. Mettille,* 333 N.W.2d 622 (Minn.1983); *Langdon v. Saga Corp.,* 569 P.2d 524 (Okla.App.1977); *Martin v. Mann Merchandizing, Inc.,* 570 S.W.2d 208, 211 (Tex. Civ.App.1978); *c.f.* 1A Corbin on Contracts § 153 (1963); Calamari and Perillo, *The Law of Contracts* §§ 2–14, 2–18, 2–24) 2d ed. 1977); Blades, "Employment at Will v. Individual Freedom: Of Limiting the Abusive Exercise of Employer Power," 67 Colum.L.Rev. 1404 (1967).

We hold that in the instant case unilateral contract analysis is correct and the district court did not err in refusing the hospital's instruction on mutuality.

■The hospital next asserts that the court erred in instructing the jury on Watson's theory that she had been terminated in violation of public policy. Although Watson did not plead a cause of action for a wrongful discharge based upon violation of public policy, Watson advanced the theory that the termination resulted from hospital retaliation for Watson's pro-union activities. Such theory was advanced at the time of summary judgment, in Watson's deposition, and addressed by both parties in their trial briefs. The hospital submitted its own proposed jury instruction dealing with termination alleged to be against public policy.

■When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings. I.R.C.P. 15(b). Failure to amend does not affect the result of the trial of those issues, and whether an issue has been tried with the consent of the parties is a decision within the trial court's discretion. *Smith v. King,* 100 Idaho 331, 597 P.2d 217 (1979); *Lynch v. Cheney,* 98 Idaho 238, 561 P.2d 380 (1977).

We find no abuse of discretion in the trial court submission of that issue to the

jury, nor do we find any error in the given instructions. An employee may claim damages for wrongful discharge when the motivation for discharge contravenes public policy. *MacNeil v. Minidoka Hospital*, 108 Idaho 588, 701 P.2d 208 (1985); *Jackson v. Minidoka Irrigation Dist.*, 98 Idaho 330, 563 P.2d 54 (1977).

For more than 50 years it has been the legislative declaration of public policy in Idaho that:

"In dealing with employers the individual unorganized worker is helpless to exercise actual liberty of contract and to protect his freedom of labor, and thereby to obtain acceptable terms and conditions of employment. Therefore it is necessary that the individual workman have full freedom of association, self-organization, and designation of representatives of his own choosing, to negotiate the terms and conditions of employment, *and that he shall be free* from the interference, restraint or coercion of employers of labor, or their agents, in the designation of such representatives or in self-organization or in other concerted activities for the purpose of collective bargaining or other mutual aid or protection." (Emphasis added.) I.C. § 44–701.

Other courts have recognized that discharge because of union membership and/or activity offends principles of public policy. *DeHorney v. Bank of America Nat. Trust & Sav. Ass'n*, 777 F.2d 440 (9th Cir.1985); *Tameny v. Atlantic Richfield Co.*, 27 Cal.3d 167, 164 Cal.Rptr. 839, 610 P.2d 1330 (1980); *see also Krystad v. Lau*, 65 Wash.2d 827, 400 P.2d 72 (1965). However, this Court has not decided this precise question, and at bottom such decision is unnecessary in the instant case. No request was made for the submission of special interrogatories to the jury for submission of the issue of termination in violation of public policy as contrasted with termination in violation of contract. The verdict tendered to the jury in this regard was only one in general terms for breach of contract. Therefore, we are unable to determine what part, if any, of the jury's verdict resulted from the issue of termination in violation of public policy and the court's instructions to the jury relating to that issue.

■ The hospital next asserts that the court erred in denying the hospital's motion to reduce the verdict to eliminate damages for wages lost by Watson following trial, and argues that Watson's damages should have been limited to compensation for only those wages and benefits which were lost prior to the time of trial. The trial court instructed the jury that if they found for Watson they must then fix the amount of damages which have been "proved by the evidence to have resulted as a natural and ordinary consequence of the defendants' breach or been reasonably expected by both parties to the contract, at the time the contract was made, as being the probable result of breach of the contract: ...." The hospital did not object to that instruction which expanded the elements of damage which could be considered beyond the loss of earnings sustained by plaintiff.

The evidence presented by Watson was that she had eight years of seniority at the hospital and had been making approximately $1,000.00 a month at the time she was discharged. After the discharge Watson was out of work for seven months and she testified that she had been unable thereafter to find suitable employment commensurate with her skills and abilities. The only job she could find was in a potato warehouse which paid approximately one dollar an hour less than at the hospital. At the hospital she had worked 41 hours a week, with some overtime, at the rate of $8.33 an hour, while at the potato warehouse she worked only on an on-call basis and averaged four days of work a week. Watson, at that time, had a work expectancy of 28 years. We hold that there was sufficient evidence of economic loss to justify the damage award made by the jury.

The judgment of the district court and the order denying the motion for judgment notwithstanding the verdict are affirmed.

**50**

Costs to respondent. No attorney fees on appeal.

DONALDSON, C.J., and BISTLINE and HUNTLEY, JJ. concur.

BAKES, Justice, dissenting:

The district court's action in the present case, which removed from the jury the question of the existence of certain terms of an employment contract, was contrary to established law and thus erroneous. The majority errs in affirming that action.

This Court has consistently held that question of the existence of a contract, or the terms thereof, is a question of fact for the trier of fact. The sole exception to this rule is where the evidence admits of only one reasonable inference or conclusion. *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 368, 679 P.2d 640, 645 (1984). Furthermore, we have consistently held that the question of whether the contents of employer manuals or policies constitute enforceable terms of an employment contract is likewise a question of fact for the trier of fact. *Johnson v. Allied Stores Corp., supra; Harkness v. City of Burley,* 110 Idaho 353, 715 P.2d 1283, (1986). The majority's attempt to circumvent this rule based upon its conclusion that no issue of fact exists regarding the terms of the alleged employment contract is unavailing. The majority's action in upholding the district court's decision has effectively denied appellant its right to a jury trial on a key issue in this case.

The majority correctly states that the law in Idaho is that, absent an express contract, employment is "at will" of either party to the contract. As such, the employment relationship may be terminated by either employer or employee without liability and "without cause." An employee asserting a claim of "wrongful discharge" bears the burden of establishing that the employment is not "at will." Plaintiff's complaint is completely devoid of any allegations regarding the existence of an express employment contract. It was not until the case had proceeded to summary judgment stage that plaintiff first argued the existence of a contract limiting the right of the employer to terminate the employment relationship. It was at this stage of the proceeding that plaintiff for the first time asserted that the provisions of the employee handbook were incorporated into her employment contract. Yet, plaintiff's trial brief agreed with defendant's argument that "[w]hether a contract between an employer and employee contains terms limiting the employer's right to discharge the employee depends upon whether there was a meeting of the minds of the parties with respect to such terms. *Johnson v. Allied Stores Corp.,* 106 Idaho 363, 679 P.2d 640 (1984); *Shields & Co. v. Green,* 100 Idaho 879, 606 P.2d 983 (1980)."

It is by now axiomatic that questions regarding "meeting of minds" or the intent of parties to the contract are, in nearly all cases, questions of fact for the trier of fact. The majority fails entirely in its attempt to address the issue of meeting of minds. Instead, the majority sets up an issue of "mutuality of obligation" which it finds easily overcome based on the fact that the employment contract in this case involves a unilateral contract. The Court's statement in this regard is a statement of the obvious; the very nature of a unilateral contract is such that mutuality of obligation would never exist, at least before the unilateral contract is performed. However, a finding of no "mutuality of obligation" does not equate with the finding of meeting of the minds or address the intent of the parties as to whether or not the provisions of the handbook were incorporated into Mrs. Watson's employment contract and therefore binding upon the hospital.

Indeed, the only evidence in the record and before the trial court was short excerpts from the policy manual. However, Mrs. Watson in her testimony never asserted that the policy manual provisions were relied upon by her as terms of her contract with appellant hospital. In fact, the only testimony before the trial court was to the effect that the policy manual was a guide for management. There simply was no

testimony that the policies were applied to non-management employees. The language utilized in the policy manual itself discloses that the policies in the manual are addressed to management personnel only. Testimony elicited by plaintiff's counsel from the hospital's personnel director was to the effect that sanctions for failure to follow the policy guidelines were imposed on *supervisors* and not on non-management employees. Indeed, the record discloses that the entire thrust of plaintiff's counsel's questioning of hospital personnel was along the lines of finding out why *management* did not follow policy regarding *timekeeping*. Counsel for plaintiff simply did not attempt to elicit any testimony regarding policies of the hospital concerning limitations on the right of the hospital to discharge employees. At no time did counsel seek to elicit testimony from hospital personnel as to the binding effect of hospital policy on non-management employees.

Plaintiff did attempt to have admitted into evidence the employee handbook as a whole on grounds that the terms contained therein were part of her employment contract. However, the district court sustained appellant hospital's objection to the admission of that piece of evidence. That is, plaintiff argued that the employee handbook contained provisions which she felt were part of her employment contract and sought to have that evidence admitted on that basis for that very purpose. However, appellant hospital was successful in its objection to the evidence, and the handbook was not admitted into evidence. Therefore, there is simply no basis in the record before this Court or before the trial court for finding as a matter of law and instructing the jury that a contract existed based upon the terms of the employee handbook or policy manual. Again, as we stated in *Harkness v. City of Burley, supra,* "At a minimum, [the question of whether or not the terms of the policy manual constituted terms of the employment contract is] a question of fact for the jury to decide." 110 Idaho at 359, 715 P.2d at 1289. In no event has plaintiff advanced

her burden of proof so far as to warrant taking the issue from the jury by finding in her favor on the issue of the existence of a contract and the terms thereof as was done in this case. Yet, that is precisely what the trial court did by giving the following instruction:

## "INSTRUCTION NO. 12

"In this case, a contract of employment did exist between the Plaintiff and the Hospital. *The contract contained a provision which set forth certain actions which could result in an immediate discharge.* The Hospital maintains that the Plaintiff was discharged because of an intentional falsification of a certain time record which record was required for payroll computation. The Court in a later instruction will instruct you as to the burden of proof; however, the Court will inform you at this time that the burden is not upon the Hospital to prove they had a legal and justifiable right to discharge the Plaintiff, but the burden is upon the Plaintiff to prove the discharge was wrongful." (Emphasis added.)

Whether the provisions of the manual were contained in the employment contract was a question of fact to be submitted to the jury. *Harkness v. City of Burley, supra.* Because the trial court denied appellant its right to a jury trial on that fact issue, this Court should reverse the decision of the district court and remand for a new trial permitting the appellant the opportunity to present the issue of the existence of a contract to the jury for its decision.