739 P.2d 380

Joel R. STEVENSON, S.S.A. 516–84–7313, Claimant-appellant,

v.

T R VIDEO, INC., Employer-respondent,

and

State of Idaho, Department of Employment, Respondent.

No. 16475.

Supreme Court of Idaho.

June 16, 1987.

Idaho Legal Aid Services, Inc., Lewiston, for appellant; Randall W. Robinson argued.

Jim Jones, Atty. Gen., Boise, for respondent Dept. of Employment; Evelyn Thomas, Deputy Atty. Gen., argued.

BAKES, Justice.

Claimant Joel Stevenson appeals a decision of the Industrial Commission which found him ineligible to receive unemployment compensation benefits. Claimant contends that the Industrial Commission erred as a matter of law in its finding that he voluntarily quit his job without good cause. For the reasons explained below, we reverse and remand.

The facts, as essentially found by the commission, are as follows. Claimant worked as a manager at a retail video store in Lewiston from April, 1984, through July 31, 1985. During the first few months of 1985 claimant and his employer, Mr. Shawley, had several disagreements concerning claimant's pay. In early May of 1985, claimant gave notice of his intent to terminate his employment because Mr. Shawley had failed to honor compensation agreements the two had entered into on more than one occasion. Following the notice of intent to terminate, Mr. Shawley met with claimant, and the two verbally agreed to a new pay arrangement whereby claimant would receive a base pay of $1000 per month for a 165-hour work month, plus $7.50 per hour overtime and 1% commission on all retail sales. The new compensation was to be retroactive to May 1 and was to remain in effect until either August 31st or September 15th, 1985, at which time the agreement would be renegotiated. Claimant was paid under this new agreement through July 13, 1985.

In June of 1985, Shawley incorporated his business in the State of Washington. (The Idaho portion of the business was not incorporated until August 5, 1985.) During the incorporation process, and after consulting with his accountants, he decided to change the method of payment under the agreement with claimant. Apparently, Mr. Shawley intended to standardize the treatment of the store managers of all three of his retail outlets, stating that he was advised that federal labor law required this.

The commission found that while claimant was paid through July 13, 1985, based on the May agreement, Shawley again met with claimant on July 13, 1985, to discuss the new standardized pay arrangement. Mr. Shawley told claimant that his base salary would remain at $1000 per month, but that he would be expected to put in a full 40-hour work week with at least 173½ working hours per month, and that claimant could have either the $7.50 overtime rate or the 1% sales commission but not

both.[1] Claimant indicated to Shawley that the new terms were unacceptable to him and that Shawley's unilateral imposition of the new terms would constitute breach of their prior agreement reached in May. Claimant left the meeting believing that the matter was settled and that his compensation would remain according to the terms of the May agreement. Shawley, on the other hand, left the meeting believing that claimant understood that compensation after July 13, 1985, would be according to the new terms.

On July 30, 1985, claimant and Shawley met again to discuss future plans for the retail store. On that occasion Shawley requested claimant to sign a covenant not to compete should he discontinue his employment with Shawley. After threatening claimant with discharge if he did not sign the covenant, claimant signed. The following day, July 31, 1985, Shawley called claimant and asked for time card information for all employees at claimant's store. When claimant offered his own overtime information, Shawley responded that the matter had been settled during their July 13th discussion and that claimant could not be paid both overtime and commission for the work that he had completed after July 13, 1985. The two argued, and Shawley was specific in telling the claimant that the matter was settled and could not be negotiated. Claimant was told that if he was unhappy he should seek employment elsewhere and that Shawley would find someone else to do claimant's job. Claimant's reply was, "Maybe you should." At the conclusion of the telephone conversation, claimant left the store and went home based on his understanding that the "take it or leave it" proposition indicated that he had been discharged. Shawley, on the other hand, contended that at the conclusion of the telephone conversation he was of the opinion that claimant had quit. The next morning Shawley asked an employee from another store to open the store which claimant managed. Shortly thereafter, claimant called the store to determine whether a replacement had been hired, and

when the worker who had been sent to the store by Shawley answered the phone claimant believed that he had indeed been fired and therefore did not report for work. About an hour later, the claimant telephoned Shawley and a discussion was held wherein all the previous evening's telephone conversations were again reviewed. Shawley remained firm on the new pay arrangement and told claimant that he only had the choice of deciding whether he wished to be paid for overtime or commission, but not both. Claimant then called Shawley a crook, and Shawley hung up on claimant.

Claimant filed for unemployment insurance benefits on August 4, 1985. In a determination dated August 22, 1985, the department declared him ineligible for benefits based on the department's conclusion that claimant had voluntarily quit work without good cause. I.C. § 72–1366(e). Claimant protested, and an appeal was taken to the appeals bureau. The appeals examiner upheld the determination of ineligibility, and the matter was then appealed to the Industrial Commission. Neither party asked for a hearing, and the case was heard without the presentation of additional evidence.

The Industrial Commission upheld the appeals examiner. The commission, while noting that claimant's separation from employment was due to reduction in compensation proposed by Shawley, nevertheless found that claimant quit his job without attempting to explore the job market for new employment. The commission found that the new compensation scheme imposed on the claimant at the July 13, 1985, meeting would have reduced claimant's future compensation by 9.2% compared to the average compensation paid for the prior three monthly periods. The commission then concluded that a reasonable person would not voluntarily quit employment in the face of a 9% wage reduction without first exploring the job market to determine the availability of other satisfactory employment. Without further evidence of a more

---

**1.** Claimant, in his statement to the department, said that Shawley advised him that the new

arrangement would be retroactive to July 1, 1985.

substantial decrease in total compensation or evidence that claimant had first attempted to secure other employment, the commission concluded that claimant did not have good cause for voluntarily quitting his job.

The sole issue on appeal is whether claimant had good cause to leave his employment.[2] The commission in this case determined that the employee voluntarily quit and, having so concluded, then addressed the question of whether he had good cause. In determining good cause, the commission addressed only the question of whether the approximately 9.2% decrease in compensation would cause a reasonable person to voluntarily quit employment without first exploring the job market and attempting to secure other employment. The commission concluded that the claimant failed to make such a search before quitting and therefore did not have good cause for quitting. Those findings are supported by substantial evidence in the record.

Claimant, on the other hand, contends on appeal that under the particular facts of this case good cause did exist for his voluntary termination of the employment relationship. Specifically, claimant contends that the July 13, 1985, meeting with his employer did not result in any change in their compensation agreement, and accordingly on July 31st when his employer told him that he would not be paid for both overtime in excess of 165 hours that month and a 1% commission, that the employer, in effect, had withheld a portion of his agreed-upon wages and that therefore he was justified in quitting. Claimant asserts that the facts of this case bring him within the rationale of our holdings in *Wood v. Quali-Dent Dental Clinics,* 107 Idaho 1020, 695 P.2d 405 (1985), and *Smith v. Johnson's Mill,* 96 Idaho 760, 536 P.2d 755 (1975). In both those cases we held that an employer's withholding of wages due an employee in violation of I.C. § 45–611 constitutes, as a

matter of law, "good cause" sufficient to justify an employee to voluntarily quit his job without jeopardizing his entitlement to unemployment compensation benefits. Claimant contends on appeal that the commission failed to consider the legal implications of his pay arrangement with Shawley and thus failed to recognize the controlling principles set forth in the *Smith v. Johnson's Mill, supra,* and *Wood v. Quali-Dent Dental Clinics, supra,* cases. We agree and therefore reverse the decision of the Industrial Commission and remand for further proceedings.

■ Section 45–611 of the Idaho Code provides as follows:

"**45–611. Withholding of wages.**—No employer may withhold or divert any portion of an employee's wages unless:

"1. The employer is required or empowered to do so by state or federal law, or

"2. The employer has a written authorization by the employee for deductions for a lawful purpose."

In *Smith v. Johnson's Mill, supra,* we held that an employer's violation of Section 45–611 would give the aggrieved employee "good cause as a matter of law for leaving his employment" if two additional factors were also present: (1) The amount withheld was not trivial, and (2) the employee's "attempt to settle the matter with his employer were rebuffed." *Smith v. Johnson's Mill,* 96 Idaho at 761, 536 P.2d at 756. Since the Industrial Commission in the present case did not directly address the applicability of the *Smith* and *Wood* cases and I.C. § 45–611 to the facts of this case, we must remand the case to them for further factual determinations. First, since the commission found that the claimant was fully paid through July 13, 1985, pursuant to the earlier May oral agreement, the commission must determine if an illegal withholding of wages occurred during the period July 13, 1985, through the date of termination, July 31, 1985, in violation of

**2.** In *Ellis v. Northwest Fruit & Produce,* 103 Idaho 821, 654 P.2d 914 (1982), we held that "good cause" within the meaning of the Unemployment Security Law eligibility requirements, I.C. § 72–1366 "is not susceptible of an exact definition[;] [r]ather, the meaning of these words must be determined in each case from the facts of that case." 103 Idaho at 822, 654 P.2d at 915, *citing Saulls v. Employment Security Agency,* 85 Idaho 212, 377 P.2d 789 (1963).

I.C. § 45–611. This will entail, among other things, a determination of the terms of the pay arrangement for that particular period.[3] The commission did not directly address this issue, nor did it make any findings on whether or not there was a meeting of minds between the two parties at the July 13, 1985, meeting concerning any new agreement for reduced wages. The facts as found by the commission suggest, but do not finally decide, that the parties came away from that meeting with two different understandings regarding the compensation to be paid after July 13, 1985. On remand if the commission finds that at the July 13, 1985, bargaining session there was no meeting of the minds regarding a change in the compensation arrangement previously agreed upon between the parties in May, then the commission must determine whether or not the employer Shawley's refusal on July 31, 1985, to pay the entire compensation which would have been earned between July 13 and July 31, 1985, pursuant to the prior May agreement violated the factors set forth in the *Smith* and *Wood* cases. In other words, if a withholding in violation of I.C. § 45–611 has occurred, the commission must determine (1) whether the amount withheld was trivial, and (2) whether the employee's attempts to settle the dispute with his employer were unfruitful. The record in the present case does indicate that the second factor set forth in the *Smith* case is present in this case. Here, as in *Smith*, claimant's attempts to settle the matter with his employer were rebuffed, *i.e.*, he was told that the matter of his pay arrangement was closed and not open to further discussion; essentially he was told to take it or leave it.

◼ The respondent contends on appeal that any issues regarding an illegal withholding under I.C. § 45–611 were not raised before the commission and therefore are not properly before this Court on appeal. While that issue is close, we believe that claimant did plead sufficient facts in his petition to the commission to raise the issue of a withholding. He alleged the existence of a binding oral contract between himself and his employer concerning his wages. He alleged a unilateral breach of that contract by his employer which resulted in a withholding of a portion of his wages due under the terms of the oral contract. Furthermore, the employer took the position before the appeals examiner that his actions changing the oral agreement were mandated by a federal labor law. This testimony and the findings of the appeals examiner were in the record before the Industrial Commission. Thus, it is clear that sufficient facts were placed before the Industrial Commission to raise the issue of an illegal withholding under I.C. § 45–611, thus invoking the rationale of our cases in *Wood* and *Smith, supra.*

◼ Respondent also contends on appeal that any issue concerning violation of I.C. § 45–611 is irrelevant because claimant was an "at will employee." We likewise find respondent's arguments concerning the "employee at will" doctrine to be without merit. The "employment at will" doctrine has no application to the facts of the present case. That doctrine is applicable solely to actions for wrongful discharge. It is an affirmative defense which may be raised by an employer to preclude liability on his part for termination of the employment contract with an employee. *See Watson v. Idaho Falls Consolidated Hospitals, Inc.,* 111 Idaho 44, 720 P.2d 632 (1986). The present case is not concerned with claims of wrongful discharge; it is an unemployment compensation case. In unemployment compensation cases, the question raised is whether the employee was

---

**3.** I.C. § 45–611 is only violated by a wrongful withholding. Thus, as a preliminary matter the commission must determine the amount of wages due. Additionally, the commission must determine if the withholding was authorized by state or federal law or by written permission of the employee. The employer in the present case alleged before the appeals examiner that a certain federal labor law permitted him to impose the new wage agreement on claimant. Since we are remanding this matter to the Industrial Commission, the employer may wish to present additional evidence or authorities on this issue. If the existence of such a labor law is proven, then a withholding in contravention of Section 45–611 may not have occurred.

discharged or whether he voluntarily quit. The same question applies where there is an employment contract, or the employment is "at will." In either case, if the employee is discharged, the question which the commission must decide is whether or not the discharge was for misconduct in connection with his employment. If the employee voluntarily quits, the question the commission must decide is whether or not the employee had "good cause" to voluntarily quit. I.C. § 72–1366(e). In the arena of unemployment compensation benefits, whether an employee's employment is "at will" is simply not a relevant inquiry.

The decision of the Industrial Commission is reversed and remanded for further proceedings consistent with this opinion. Costs to appellant. No attorney fees on appeal.

DONALDSON, BISTLINE and HUNTLEY, JJ., concur.

SHEPARD, C.J., concurs in result.