793 P.2d 1251

Duane LOWERY and Joanne Lowery, Husband and Wife, Appellants–Respondents on appeal,

v.

The BOARD OF COUNTY COMMISSIONERS FOR ADA COUNTY, Ed Riddle, Doyle Miner and Michael L. Johnson, Commissioners, Respondents,

and

David C.P. Hayes and Robin L. Hayes, Husband and Wife, Respondents–Appellants on appeal.

No. 18339.

Supreme Court of Idaho.

June 15, 1990.

Stephen J. Lord, Boise, for appellants-respondents on appeal.

Connolly & Smyser, Chartered, Boise, for respondents. John P. Connolly, argued.

McDEVITT, Justice.

The facts are undisputed. In the spring of 1984, David C.P. Hayes, who had been operating a mobile veterinary practice out of his residence near Eagle, learned that he would need a conditional use permit to continue practicing from his mobile clinic. He applied for the conditional use permit on June 18, 1984, and it was approved by the Ada County Zoning Commission on July 26, 1984. The Commission imposed ten conditions on the conditional use permit in order to assure that the clinic would comply with the Ada County zoning ordinance (hereinafter "the ordinance"). Of special significance to this appeal is condition # 7, requiring Hayes to provide evidence of an easement for the use of a private road to the property. The Hayeses' neighbors, the Lowerys, appealed the Commission's issuance of the conditional use permit. The Commission voted unanimously to approve the conditional use permit subject to the aforementioned conditions, and denied Lowerys' appeal.

At approximately the same time that Hayes applied for his permit, a dispute arose between the Hayeses and the Lowerys. At issue was Dr. Hayes's use of a roadway that connected his property to Pollard Lane by transversing the Lowerys' property. The Lowerys insist that Dr. Hayes's use of that roadway, the only roadway connecting the Hayeses' property to Pollard Lane, should be restricted. That dispute is now pending in the Fourth Judicial District Court in a separate action. In that action, Dr. Hayes and others are requesting that the court declare a prescriptive easement for their use of the north end of the roadway that attaches to Pollard Lane.

On November 1, 1984, the Ada County Zoning Commission issued Dr. Hayes a zoning certificate to operate the veterinary clinic on his property. This certificate was issued pursuant to the Commission's findings on Hayes' application for a conditional use permit based on Hayes's representation that he possessed an easement accessing a roadway of record, prior to 1968, to access the property in question. The Lowerys also appealed this decision to the Commission. The Commission denied their appeal on April 3, 1985.

The Lowerys appealed both of the Commission's decisions to the district court. Those two appeals (case numbers 86995 and 88353) were consolidated before the district court. The district court issued its decision on December 2, 1986. The court found that although the Lowerys assigned various errors to the Commission, the dispositive issue in this case concerned easements running to the Hayeses' property.

In reversing the Commission's decision to grant Hayes a conditional use permit, the court ruled that there was not substantial and competent evidence to support the Commission's conclusion that:

> Although substantial and conflicting oral testimony has been taken in this matter, testimony has been provided that a historical access easement serving the Hayeses' property did in fact exist prior to the ordinance date of May 20, 1968, as required in § 22.3 of the zoning ordinance.... The board concludes that the Hayeses' parcel does have frontage on an easement of record sufficient to comply with the requirements of the zoning ordinance.

Findings of Fact, July 8, 1985 (R. 38).

The court awarded the Lowerys $3,961.00 for attorney fees and $345.00 for costs on the basis that:

> A careful review of the chain of title would have revealed the commission's error. There was never a basis for asserting an easement. The position asserted by the respondents on the critical issue before the court was frivolous and without foundation in law or fact.

Both the county and the Hayeses appealed the district court's award of attorney fees. The appeals were not consolidated. The Idaho Court of Appeals issued two separate opinions on July 6, 1988. In the opinion involving the county, *Lowery v. County Bd. of Ada County Commrs.*, 115 Idaho 64, 764 P.2d 431 (Ct.App.1988), the Court of Appeals reversed the district court's taxation of fees against the County Commissioners. In the opinion involving Hayes, *Lowery v. Hayes*, 1988 Slip Op. # CA–71 (July 6, 1988), the Court upheld the district court's award of attorney fees and costs against the Hayeses, ruling that they should bear these costs alone. The Hayeses petitioned for a rehearing. The petition was granted and the case reheard. At the rehearing the Hayeses were represented by new counsel. On June 19, 1989, the Court of Appeals withdrew opinion number CA–71 and substituted opinion number CA–71A, which reverses the district court's decision to tax fees to the Hayeses.

The Lowerys now petition this Court for a review of the most recent Court of Appeals' decision.

On granting review of an opinion of the Court of Appeals, this Court directly reviews the opinion of the district court from which the initial appeal was taken.

The trial court's determination of its authority as to the standard and scope of its review of a decision of the Ada County Commissioners pursuant to I.C. § 67–6521 was well reasoned and in accordance with the holdings of this Court.

The issue before us is the granting of attorney fees by the district court.

The district court's analysis of this Court's rulings on attorney fees under the provision of I.C. § 12–121 and I.R.C.P. 54(e)(1) was thorough and correct. However, I.C. § 12–121 does not apply in this case.

The pertinent provision of I.C. § 12–121 states as follows:

> 12–121. Attorney's fees.—In any civil action, the judge may award reasonable attorney's fees to the prevailing party or parties, provided that this section shall not alter, repeal or amend any statute which otherwise provides for the award of attorney's fees....

The applicable provision of I.R.C.P. 54(e)(1) provides:

> Rule 54(e)(1). Attorney fees.—In any civil action the court may award reasonable attorney fees to the prevailing party or parties as defined in Rule 54(d)(1)(B), when provided for by any statute or contract....

The words *"in any civil action"* are controlling in this case.

Idaho Rule of Civil Procedure 3(a) clearly declares that *"a civil action is commenced by filing a complaint with the court."* The matter before the district court was a decision of the Ada County Commission

pursuant to I.C. § 67–6507—67–6509 by an application filed with the County Zoning Commission and brought before the district court by the filing of an appeal.

These proceedings do not constitute a *"civil action," "commenced"* by the filing of a complaint as required by Rule 3(a) of the Idaho Rules of Civil Procedure.

This Court in *Bogner v. State Dept. of Revenue and Tax.*, 107 Idaho 854, 693 P.2d 1056 (1984), awarded attorney fees, stating, "an appeal to district court is for certain a civil action, and hence within the purview of I.C. § 12–121."

The *Bogner* case was initiated by the *"filing of a complaint"* under I.C. § 63–3049 for refund after the taxpayer had protested the tax and obtained an adverse administration ruling and paid the tax assessed. Thus, the quoted statement from *Bogner* must be read in light of those facts. *Bogner* is not authority for the awarding of attorney fees in an administrative ruling appeal.

Subsequently, this Court in *Swanson v. Kraft*, 116 Idaho 315, 775 P.2d 629 (1989), similarly held that workers compensation cases were not *"civil actions"* for purposes of attorney fee awards pursuant to I.C. § 12–121 or I.R.C.P. 54(e)(1). Idaho Code § 72–201 abolishes all personal injury claims by workers against their employers and substitutes an administrative process in lieu of *"civil actions."*

The award of attorney fees in the instant case was therefore error as this proceeding was not a *"civil action."*

We do not decide any other issue raised in this proceeding or on appeal.

No costs, no attorney fees on appeal.

BAKES, C.J., and JOHNSON and BOYLE, JJ., concur.

BISTLINE, Justice, specially concurring.

Although continuing to adhere to the assertions of Donaldson, J. and Bistline, J. in *Minich v. Gem State Developers, Inc.*, 99 Idaho 911, 919, 591 P.2d 1078, 1086 (1979), that this Court has neither inherent nor statutory authority to award attorney fees on appeals, it is becoming quite evident that a majority of this Court will continue down that path until the legislature attempts to intervene—for which reason it seems that the better course to follow is down that same well-trodden path, but with a whole new twist. Dr. and Mrs. Hayes ask that we delete the judgment for attorney fees entered against them by the trial court on the grounds that they have not pursued this action so fallaciously as to be frivolous. Such was the holding of the extremely well-reasoned opinion of our Court of Appeals, a copy of which is appended hereto for the very reason of its quality and content. Whether one approves or disapproves of awarding attorney fees on appeal, it has become a way of litigation and likely will remain so.

On the other hand, Justice McDevitt has selected *Bogner v. State Dept. of Revenue and Tax,* 107 Idaho 854, 693 P.2d 1056 (1984), as the authority for cancelling the trial court's award of substantial fees to the Lowerys. In doing that he is eminently correct in relying upon *Bogner. Bogner,* however, was a one-of-a-kind case, and accordingly can have little precedential effect. The stance of the case is exactly as he has portrayed it. It *was* an appeal to the district court and it was initiated by the filing of a complaint. Footnote 4 of *Bogner,* 107 Idaho at 857, 693 P.2d at 1059, sets out the provisions of I.C. § 63–3049, which as applicable are synopsized to inform that a Tax Commission final assessment (following redetermination) "may be *reviewed"* in the district court of the taxpayer's county of residence, or in Ada County "by a *complaint"* which is timely filed, provided that the taxpayer shall have first paid the tax. The same statute provides that the district court decision may be

appealed to the Idaho Supreme Court.[1] *Bogner* was a highly unusual procedural circumstance, and neither of the litigants in the present action cited it. The issue raised by the parties was the application of I.C. § 12–121 and I.A.R. 54(e)(1), whereunder Dr. & Mrs. Hayes were assessed attorney fees.

Again, there is not one thing wrong with the rationale of the majority's opinion. What is amiss, however, is that the district court erred in finding justification for the assessment of fees, and that is the point which was successfully relied upon for reversal in the Court of Appeals, leaving as the proposition before this court: Do we want to reverse the district Court on a premise not urged by Dr. & Mrs. Hayes? Moreover, it is to be noted that the statute involved in *Bogner* is not one of common knowledge or of much worth other than in tax cases. One also wonders what will happen in a tax review case where the taxpayer files a *petition* for review in the district court instead of a complaint. The statute requires a complaint, and one wonders, after all these years at plying the trade, is there a distinction with a difference? Ordinarily a party seeking review *petitions* that it be granted. But, as stated at the outset, *Bogner* is a unique scenario, which is my premise for suggesting that we would do better to simply affirm the Court of Appeals.

### APPENDIX

The Court of Appeals' opinion, with some emphasis supplied, reads as follows:

It is our task to determine whether Hayes' defense of the Board's decision could, in the reasonable exercise of the district court's discretion, properly be termed frivolous or without foundation. Therefore, we focus on the merits of the defensive position asserted to the district court by Hayes—i.e., that the Board had a reasonable basis to determine that an easement of record existed from Hayes' property to a public road, Pollard Lane.

The resolution of this question ultimately turned upon an interpretation of documents recorded prior to 1968 relating to an easement along the south edge of the Hayes and Lowery parcels. The particular question was whether a 1906 deed which conveyed a parcel to the east of the property now owned by Hayes and Lowery created an easement across the Lowery and Hayes tracts, then in one ownership, which Hayes later was entitled to use. Lowery contended, both before the Board and before the district court, that this easement benefited *only* the 1906 grantee's property to the east, and not any of the parcels crossed by the easement. In contrast, Hayes asserted that the clear intent evidenced by the deed and subsequent conveyances was to create an easement for access to a public highway, in favor of several properties in the area, including the tract ultimately owned by Hayes.

The court rejected the contention that the 1906 deed or any other recorded document created an 'easement of record' in favor of Hayes' property. The district court concluded:

This easement was an easement appurtenant with the Hayes and Lowery properties being part of the servient tenement. The property deeded to Mr. Thompson [the 1906 grantee] was the dominant tenement. *See* Smith, C. and Boyer, R., *Survey of the Law of Property*, 382 (1971). In other words, the land which now belongs to the Hayes and Lowerys was *burdened* by an easement running to the property to the east. The 1906 deed gave nothing to the owner of the parcel containing the Hayes and Lowery properties, but in fact *took* an easement. [Emphasis in original.]

---

1. Not involved in *Bogner*, but something to remember, is that the same statute intertwines the above procedure with an alternate remedy which is not in district court, but before the Board of Tax Appeals. *See* footnote 4 of *Bogner*.

The court reviewed the evidence presented to the Board and found no indication of an easement of record benefiting the Hayes property. As we have noted, the court deemed Hayes' argument to the contrary to be 'frivolous and without foundation in law and fact,' and, accordingly, awarded attorney fees to Lowery. The essence of the court's determination was that Hayes had asserted a position on the access question which was simply wrong as a matter of law.

In the present appeal, we initially upheld the district court's award of fees. After reargument of the merits of this case on the Hayes' petition for rehearing, however, we are persuaded that the district court abused its discretion. We have held that an award of attorney fees will not be made under I.C. § 12–121 simply because a party loses on a point of law. *See Lowery I* [, 115 Idaho] at 69, 764 P.2d at 435, *citing Associates Northwest, Inc. v. Beets*, 112 Idaho 603, 733 P.2d 824 (Ct.App.1987). *The standard for determining whether such an award should be made is not whether the position urged by the nonprevailing party is ultimately found to be wrong, but whether it is so plainly fallacious as to be frivolous. Id.; see also Gulf Chemical Employees Federal Credit Union v. Williams*, 107 Idaho 890, 693 P.2d 1092 (Ct.App.1984); *Wing v. Amalgamated Sugar Co.*, 106 Idaho 905, 684 P.2d 307 (Ct.App.1984). Here, the question is whether Hayes' position on the access question was so plainly fallacious as to be frivolous.

The access question is best understood in historical terms. The land owned by Lowery and Hayes was originally part of a larger tract owned by an individual named Frost. In 1906, Frost conveyed property at the east end of the tract to a purchaser named Thompson, who also received an easement across the southerly end of Frost's remaining property. By 1955, the remaining Frost property had been conveyed to a party named Brown, who sold the property (except a one-acre square parcel) to a purchaser named Polley. By 1971, the western end of the old Frost tract had been conveyed to parties named Button and Greenlee, and the middle piece had been conveyed to a party named Thompson (apparently not the same Thompson as the purchaser of the tract on the east). On September 29, 1971, Thompson then divided his middle piece into three pieces, one of which he sold to a party named Volkman. He sold another to a party named Kessler, and he kept the third parcel for himself. This transaction resulted in the current configuration of the properties. The Button/Greenlee property now belongs to Lowery and the Volkman property now belongs to Hayes.

As these parcels were split out of the old Frost tract, the deeds referred to the 1906 easement running across the southerly end. Each deed said that the conveyance was 'subject to' this easement. The deeds did not say that each owner of a split-out parcel had a right to use the easement. For this reason, as we have noted, the district judge held that the easement was not a benefit, but was a burden, to these split-out parcels—particularly the parcel now owned by Hayes. Accordingly, the court held that the Hayes did not have a recorded easement meeting the requirements of the zoning ordinance.

Hayes acknowledged that the deeds did not expressly provide such an access right. However, Hayes argued that the underlying intent was to provide such access; indeed, absent such access, one or more of the split-out parcels arguably would have been 'landlocked.' Officers from two title companies appeared in the proceedings before the County Commissioners and gave differing opinions as to whether the split-out parcels had a right of access along the 1906 easement. One title officer, who was willing to insure such access, urged a common sense construction of the deeds. He also noted that in 1976, the eventual owner of the

one-acre square parcel reserved by Brown executed and recorded a 'deed of easement' expressly granting the owners of *all* the split-out parcels a right to use the easement where it ran over her property. However, as the district court later determined, the Lowerys never granted such an express right with respect to the portion of the easement running across their property.

Thus, the court was faced with a choice between a strict interpretation of deeds, based on their literal language, and the so-called common sense interpretation, based on an inference of intent. The district judge correctly came down on the side of literal interpretation. Real estate law historically has given dominant effect to the facial language of instruments of conveyance, rather than to any unstated intent. This assures stability of land titles. (Of course, there are some limited exceptions—such as the rule that an outright deed may be treated as a security instrument if such intent is established by clear and convincing evidence.)

*However, the so-called common sense position urged by Hayes was not so plainly fallacious as to be frivolous.* Hayes' position was supported by testimony from a title officer and was accepted by the County Commissioners (who had their own legal advisor). Indeed, at an early stage of the proceedings before the County—when the Lowerys were represented by an attorney different from their present counsel—the Lowerys conceded that an access easement existed. This concession was later withdrawn when there was a change of counsel.

In sum, we conclude that the position asserted by Hayes before the district court was not plainly fallacious. It was fairly debatable, albeit ultimately unsuccessful. Accordingly, we set aside the award of fees to Lowery.