472 P.2d 307

Lula M. GREEN, Plaintiff-Respondent,

v.

BEAVER STATE CONTRACTORS, INC.,
Defendant-Appellant.

No. 10570.

Supreme Court of Idaho.

July 20, 1970.

Brauner, Fuller & Doolittle, Caldwell, for defendant-appellant.

Young & George, Rigby, for plaintiff-respondent.

DONALDSON, Justice.

Beaver State Contractors, Inc., hereinafter referred to as Beaver State (defendant-appellant), was engaged in a flood control project on the Upper Snake River. Prior to the commencement of the work, Beaver State inquired of Lula M. Green (plaintiff-respondent), a property owner in the vicinity of the flood control project, as to the availability of certain lava rock located on her land. With respect to this rock, Beaver State instructed Lula M. Green to have her attorney prepare a written instrument entitled "Borrow Permit" which was in essence a unilateral offer made by Lula M. Green to Beaver State, offering Beaver State the right to enter upon her land and remove the rock there-

from at a cost of 5¢ per yard.[1] The "Borrow Permit" was signed only by Lula M. Green. Subsequent to the execution of the "Borrow Permit," Beaver State constructed a bridge across the Snake River to gain access to Lula M. Green's land and commenced hauling rock across it. Lula M. Green testified that from all outward appearances Beaver State was mining the rock from her land as provided for in the agreement. In reality, however, Beaver State was removing the rock from land adjoining the land owned by Lula M. Green and Beaver State was merely using Lula M. Green's land as a means of access to obtain the rock from a third party. Eventually Lula M. Green discovered that Beaver State was not quarrying the rock from her land.

Suit was instituted by Lula M. Green in district court to recover $5,000 as the value of the rock that was available on her land under the terms of the "Borrow Permit" or in the alternative the sum of $2,500 (later amended to $5,000) as the reasonable value of the easement right granted and used by the defendant. Beaver State (defendant-appellant) claims that it is not liable to Lula M. Green since:

(1) it was not obligated to quarry any rock from Lula M. Green's land and it did not quarry any rock from her land;

(2) the roadway used by the defendant, Beaver State, was a public roadway, the use of which was not subject to any control in the plaintiff (Lula M. Green).

Subsequent to trial, the court ordered that the plaintiff (Lula M. Green) have judgment against the defendant (Beaver State) in the sum of $4,453.95 since in the district court's opinion, the rock itself had no intrinsic value ("money has been paid

more frequently to remove rock from premises than to obtain such rock") and thus the rock itself was not valuable, but rather the right to use the rock and the access thereto. What Lula M. Green sold was the right to go onto her property and obtain rock. The district court concluded that this right was exercised by Beaver State (defendant-appellant), and that it should be required to pay for the use of that right.

Although appellant has assigned almost every finding of fact and conclusion of law made by the trial court as error, they can be reduced to the contentions that:

(1) The trial court erred by not finding that the written instrument entitled "Borrow Permit" constituted nothing more than a unilateral offer made by Lula M. Green to Beaver State, which offer was never accepted by Beaver State. Beaver State maintains that it never did quarry rock from lands owned by Lula M. Green, and thereby never accepted her offer. Under these circumstances, appellant contends that a binding contract was never created. Appellant also directs the Court's attention to the fact that Lula M. Green was the only signatory to the written instrument entitled "Borrow Permit," which to appellant's point of view is evidence of a unilateral offer.

(2) The trial court erred by making a contract for the parties.

■ The first question presented by this appeal is whether or not the written instrument entitled "Borrow Permit" constituted nothing more than an offer made by Lula M. Green to Beaver State. Although Lula M. Green may have been under the mistaken notion that she entered

---

1. The pertinent terms of the Borrow Permit read as follows:

"FOR AND IN CONSIDERATION OF THE SUM OF One Dollar ($1.— and other valuable considerations, the receipt of which is hereby acknowledged and the agreement of BEAVER STATE CONTRACTORS, INC., an Oregon Corporation, to pay to the undersigned the

sum of five (5¢) cents per yard of rock removed from the hereinafter described property, the undersigned, hereinafter called the owner, grants to the said Beaver State Contractors, Inc., an Oregon Corporation, a permit to quarry the rock from the hereinafter described property * * *."

into a binding contract with Beaver State[2] a careful reading of the "Borrow Permit" indicates that it was nothing more than a unilateral offer which was to be accepted by performance. Any prior oral negotiations between Lula M. Green and Beaver State are to be disregarded since they have been merged into the "written offer" entitled "Borrow Permit," prepared by Lula M. Green's attorney, and signed by Lula M. Green. Paurley v. Harris, 75 Idaho 112, 286 P.2d 351 (1954). The standard test for finding a bilateral contract between two parties is whether or not there is "mutuality of obligation." Houser v. Hobart, 22 Idaho 735, 127 P. 997 (1912); McCandless v. Schick, 85 Idaho 509, 380 P.2d 893 (1963). In the case at bar, Beaver State was under no legal obligation to quarry rock from lands owned by Lula M. Green. The words are very clear and they impose no duty whatsoever on Beaver State to quarry any rock from the land owned by Lula M. Green. The effect of the "Borrow Permit" was to grant Beaver State the right to quarry rock should it desire to, and in the event the right was exercised, Lula M. Green was to receive 5¢ for each yard of rock that was removed. As heretofore stated, Lula M. Green was mistaken about the legal effect of the "Borrow Permit" which was drawn up by her own attorney.

 Although the evidence is undisputed that Beaver State did in fact travel across the land owned by Lula M. Green for the purpose of obtaining rock from the land of a third party and transported it over Lula M. Green's land, such action was not performed pursuant to the "Borrow Permit" or any written instrument or oral

negotiations. This brings us to the second issue raised by the appeal, viz., whether the trial court erred by "making a contract for the parties." This Court must respond to the question in the affirmative. There are certain cases when the court will reform contracts.[3] However the court cannot make a contract for the parties which the parties themselves have not agreed upon. Brothers v. Arave, 67 Idaho 171, 174 P.2d 202 (1946); Nuquist v. Bauscher, 71 Idaho 89, 227 P.2d 83 (1951).

> "In order to constitute a contract, there must be a distinct understanding common to both parties. The minds of the parties must meet as to all of its terms, and, if any portion of the proposed terms is unsettled and unprovided for, there is no contract." Phelps v. Good, 15 Idaho 76 at 84, 96 P. 216 at 218 (1908).

The trial court, while not actually describing the action taken by it as such, reformed the "Borrow Permit," which was in reality nothing more than Lula M. Green's offer, into a full fledged bilateral agreement. In essence, the trial court required Beaver State to pay Lula M. Green 5¢ for every yard of rock it hauled across her land. Such however was not the agreement contemplated by the parties and as laudable as the intentions of the trial court may have been in its attempt to avoid a seemingly unconscionable result, the action taken by it was clearly erroneous since it was not warranted under the facts presented by the case.

 Although Lula M. Green (plaintiff-respondent) failed to prove a valid contract between herself and Beaver State, the record does reveal that Beaver State trespassed[4] on lands owned by Lula M. Green

2. It is the position of Lula M. Green (plaintiff-respondent) that the "Borrow Permit" signed by Lula M. Green actually constituted a written acceptance of verbal offers made by Beaver State.

3. E. g., see: Nab v. Hills, 92 Idaho 877, 452 P.2d 981 (1969); Exum v. Portneuf-Marsh Valley Irr. Co., 38 Idaho 155, 220

P. 112, (1923); Carroll v. Hartford Fire Ins. Co., 28 Idaho 466, 154 P. 985 (1916).

4. "Trespass quare clausum fregit. 'Trespass wherefore he broke the close.' The common-law action for damages for an unlawful entry or trespass upon the plaintiff's land. In the Latin form of the writ, the defendant was called upon to show why he broke the plaintiff's close;

**744**

and the district court should have so found. Rule 15(b) I.R.C.P. provides in part that:

"When issues not raised by the pleadings are tried by express or implied consent of the parties, they shall be treated in all respects as if they had been raised in the pleadings * * *."

The evidence indicates that Beaver State unlawfully entered the lands of Lula M. Green.[5] In view of the directive declared by Rule 15(b) I.R.C.P. (as set forth above), the issue of trespass was tried by the implied consent of the parties and thus became a live issue in the case. See 3 Moore Federal Practice, ¶ 15.13 [2] at 983 (2d ed. 1968).[6] See also, Brammer v. Brammer, 93 Idaho 671, 471 P.2d 58 (1970); Lientz v. Wheeler, 113 F.2d 767 (8th Cir. 1940); George Cohen Sons & Co. v. Koch, 376 F.2d 629 (1st Cir. 1967). Although Lula M. Green proved trespass, the issue of damages resulting from the trespass was never tried in the district court since the case was tried on the theory of breach of contract and the court so erroneously found and awarded damages on that basis. Thus there was no reason for Lula M. Green to present evidence as to damages for trespass. In view of the circumstances revealed by this particular case, that of misrepresentation or overreaching by the appellant, this Court does hereby remand the case back to the district court for the purpose of ascertaining the damages suffered by Lula M. Green as the result of the trespass committed by the appellant.

"* * * in a proper case, the order may restrict the new trial to the issue of damages alone, leaving undisturbed the finding of the jury [court] that the defendant is liable." McCormick on Damages, § 19, p. 77.

i. e., the real or imaginary structure inclosing the land, whence the name. It is commonly abbreviated to 'trespass qu. cl. fr.' See Kimball v. Hilton, 92 Me. 214, 42 A. 394." Black's Law Dictionary, p. 1675 (Rev. 4 ed. 1968).

5. Testimony, Leland Latham, President, Beaver State Contractors:

The trial judge by awarding damages of $4,453.95, which were measured by the terms and provisions of the "Borrow Permit" as reformed by it, abused his discretion since no contract was proved by Lula M. Green and these damages bore no relationship whatsoever to the actual injury suffered by the plaintiff, i. e., trespass.

Case remanded to the district court for new trial expressly restricted to the issue of damages for trespass. No costs allowed.

McFADDEN, C. J., and McQUADE, SHEPARD, and SPEAR, JJ., concur.

"Q. But you couldn't have got to that particular location without going across Mrs. Green's ground, could you?

A. Yah, but it wouldn't have been feasible."

