BEA, Circuit Judge, dissenting in part and concurring in part: The majority apparently believes that unconsented entry[1] upon land is not a “legally cognizable harm” where it “merely allows the speaker to cross the threshold of another’s property.” But as a matter of the applicable Idaho law, such an uncon-sented entry constitutes a common law trespass, which is a legally cognizable harm—one from which damages are presumed to flow naturally. Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556, 560 (1960) (“Nominal damage need not be proved, but naturally flows from a wrongful entry.”). I dissent because I would hold that the “ability to hold property or to exercise control of it” requires recognition by courts of the owner’s right to exclusive possession of the land—the right to exclude anyone from entry, at any time, and for any reason at all or indeed for no reason.[2] The majority brushes aside this longstanding principle of property in concluding that entry by misrepresentation “does not infringe upon the specific interests trespass seeks to protect.” The majority’s result contradicts the “universally held” principle that the “right to exclude” is “a fundamental element of the property right.” Kaiser Aetna v. United, States, 444 U.S. 164, 179-80, 100 S.Ct. 383, 62 L.Ed.2d 332 (1979). Whilst the majority opinion relies on out-of-circuit cases which seemingly limit a landowner’s rights,[3] but which are distinguishable, I choose to rely on the law of Idaho and the common-law right of property, ages old. “There is nothing which so generally strikes the imagination, and engages the affections of mankind, as the right of property; or that sole and despotic dominion which one man claims and exercises over the external things of the world, in total exclusion of the right of any other individual in the universe.” 2 William Blackstone, Commentaries on the Laws op England *2. For centuries, Anglo-American law has affirmed this central feature of property— the right to exclude others—in the “general rule” that “our law holds the property of every man so sacred, that no man can set his foot upon his neighbour’s close without his leave.” Florida v. Jardines, 569 U.S. 1, 8, 133 S.Ct. 1409, 185 L.Ed.2d 495 (2013) (alteration and internal quotation omitted) (quoting Entick v. Carrington, 2 Wils. K.B. 275, 95 Eng. Rep. 807 (K.B. 1765), “a case ‘undoubtedly familiar’ to ‘every American statesman’ at the time of the Founding”). The Supreme Court of the United States has repeatedly held that “as to property reserved by its owner for private use, ‘the right to exclude others is “one of the most essential sticks in the bundle of rights that are commonly characterized as property.” ’ ” See, e.g., Nollan v. California Coastal Comm’n, 483 U.S. 825, 831, 107 S.Ct. 3141, 97 L.Ed.2d 677 (1987) (quoting Loretto v. Teleprompter Manhattan CATV Corp., 458 U.S. 419, 435, 102 S.Ct. 3164, 73 L.Ed.2d 868 (1982) (alteration omitted)). I therefore dissent from the majority opinion as to subsection (a) of the Idaho statute at issue. I otherwise concur in the majority opinion. The majority analyzes this case under United States v. Alvarez, in which the Supreme Court invalidated under the First Amendment the Stolen Valor Act, 18 U.S.C. § 704, a federal statute which made criminal false claims that the speaker had received the Congressional Medal of Honor. 567 U.S. 709, 132 S.Ct. 2537, 183 L.Ed.2d 574 (2012). At the outset, it is important to note that subsection (a) of the Idaho statute at issue in this case differs from the version of the Stolen Valor Act at issue in Alvarez in at least one crucial aspect: Whereas the Stolen Valor Act prohibited the act of lying about a particular subject (receipt of military decorations or medals), 18 U.S.C. § 704, subsection (a) of Idaho’s statute prohibits the act of entering a particular type of property (“agricultural production facilities”) by particular means (including “misrepresentation”), Idaho Code § 18-7042(l)(a).[4] By the plain meaning of the statute, liability attaches only to those who “enter[ ]” an agricultural production facility through lying, not to any and all who tell lies to agricultural facility owners or to the public about such owners. Id. In other words, subsection (a) of the Idaho statute does not prohibit “pure speech.” Although under Alvarez a lie—without “more”—is pure speech,[5] the Idaho statute is directed at something “more”: the conduct of knowingly entering an agricultural facility through the use of a lie. The use of the term “enters” is a clear invocation of the standards and interests of the law of trespass.[6] This provision no more regulates pure speech than do prohibitions on larceny by trick or false pretenses.[7] Therefore, I don’t see how Alvarez is applicable, or that a First Amendment analysis is at all necessary to subsection (a) of the subject Idaho statute. See Pickup v. Brown, 740 F.3d 1208, 1230 (9th Cir. 2014)[8] (“[A]n act that ‘symbolizes nothing,’ even if employing language, is not ‘an act of communication’ that transforms conduct into First Amendment speech.” (quoting Nevada Comm’n on Ethics v. Carrigan, 564 U.S. 117, 126-27, 131 S.Ct. 2343, 180 L.Ed.2d 150 (2011))).[9] Here, as in Pickwp and Carrigan, a common law trespass “symbolizes nothing.” It seems plain to me that Idaho’s political branches could enact a general criminal trespass law that includes in its definition of “trespass” entry obtained by fraud or misrepresentation. Cf. Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695, 701 (1950) (“[T]he city could ban the practice of uninvited intrusion upon private residences ... The city could ... merely declare it a misdemeanor.”); Idaho Code § 18-2403 (prohibiting theft by deception, trick, or false pretenses). If that is so, I see nothing to prevent Idaho legislators from extending such protection only to certain types of properties, such as nuclear facilities, see 10 C’F.R. § 160.3 (prohibiting trespass on “facilities, installations, and; real property subject to the jurisdiction ... of the Nuclear Regulatory Commission.”). The relative importance of nuclear facilities and “agricultural production facilities” is in the eyes of the beholder, or, in this case, the Idaho state legislature. Even assuming that Alvarez is applicable here, subsection (a) survives First Amendment review under Alvarez. As the majority recognizes, false speech may be criminalized if made “for the purpose of material gain” or “material advantage,” or if it inflicts a “legally cognizable harm.” Alvarez, 567 U.S. at 719, 723, 132 S.Ct. 2537 (plurality opinion). Similarly, in his concurrence with Justice Kennedy’s plurality opinion in Alvarez, Justice Breyer distinguished the Stolen Valor Act from presumptively constitutional statutes, such as those prohibiting fraud, impersonation, trademark infringement etc., which prohibit “a subset of lies where specific harm is more likely to occur.” Id. at 734-36, 132, S.Ct. 2537 (Breyer, J., concurring) (emphasis added). To the extent that subsection (a) prohibits misrepresentations as well as entries, I have no difficulty concluding that “entering]” the property of another “by ... misrepresentation” inflicts a “legally cognizable harm,” Alvarez, 567 at 719, is done for the purpose of material gain, id. at 723, 132 S.Ct. 2537, and involves “a subset of lies” where the “specific harm” of trespass “is more likely to occur,” id. at 736, 132 S.Ct. 2537 (Breyer, J., concurring). The state of Idaho has long recognized that a violation of a property owner’s exclusive dominion over his land is a legally cognizable harm. See Marshall v. Niagara Springs Orchard Co, 22 Idaho 144, 125 P. 208, 212 (1912) (“[I]t is the appellant’s right by reason of his ownership of the land to have exclusive possession of said land.” (emphasis added)); see also Walter E. Wilhite Revocable Living Tr. v. Nw. Yearly Meeting Pension Fund, 128 Idaho 539, 916 P.2d 1264, 1274 (1996) (“Trespass is a tort against possession committed when one, without permission, interferes with another’s exclusive right to possession of the property.” (emphasis added)); Idaho Code § 22-2402 (defining “landowner” to mean “[a] person with an interest in a parcel of land such that the person has the right to exclude others from possession of the parcel”). The majority’s proposal to count as a “legally cognizable harm” only those trespasses that violate Idaho’s criminal code is thus foreclosed by the contrary substantive law of Idaho and other common law jurisdictions. “One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.” Restatement (Second) of Torts § 163 (1965). To vindicate his right of exclusive dominion, a landowner may recover nominal damages for trespass—even absent evidence of any physical or pecuniary injury—because “[njominal damage need not be ■ proved, but naturally flows from a wrongful entry.” Taysom v. Taysom, 82 Idaho 58, 349 P.2d 556, 560 (1960); see also Nelson v. Holdaway Land & Cattle Co., 107 Idaho 550, 691 P.2d 796, 799 (Idaho Ct. App. 1984) (owner was entitled to recover nominal damages for trespass “even though no actual damages were proven”). Furthermore, a landowner has a general right to exclude others from his lands by reasonable force, under certain circumstances. Restatement (Second) of Torts § 77 (1965). Generally speaking, a landowner can use such reasonable force to defend “his exclusive possession of land” from others for any reason at all, even “personal dislike or hostility to the other.” See id. cmt. c; Rowe v. City of Pocatello, 70 Idaho 343, 218 P.2d 695, 700 (1950) (“A man’s house is still his castle. He may exclude whom he chooses.”). In fact, no less an authority than the Supreme Court of Idaho has found an actionable trespass where the defendant used a misrepresentation to gain access, to the plaintiffs property and the defendant merely crossed the property. In Green v. Beaver State Contractors, - Inc., the contractor went to plaintiff Lula M. Green and sought permission to enter and remove “lava rock” from her land.' 93 Idaho 741, 472 P.2d 307, 307 (1970). The contractor offered to pay $1 plus 5 cents “per yard of rock removed” from Green’s land, and she agreed. Id. at 307-08. In reality, however, the contractor removed rock only from land adjoining Green’s land and was merely using Green’s land as a means of access to obtain the rock from the third party, thus avoiding any obligation to pay Green for “rock removed.” Id. at 308. “In view of the circumstances,” namely the “misrepresentation ... by [the contractor],” the Idaho Supreme Court found a common-law trespass and remanded the case for a determination of Green’s damages. Id. at 310. Therefore, the Supreme Court of Idaho has recognized- that employing- misrepre’sentation to gain entry- inflicts a legally cognizable harm, even if the invader entered “merely ... to cross the threshold of another’s property.” ’ In the case of Jacque v. Steenberg Homes, Inc., 209 Wis.2d 605, 563 N.W.2d 154 (Wisc. 1997), the. Supreme Court of Wisconsin affirmed the value of the right to exclude even more emphatically. It affirmed an eye-popping award of punitive damages for the precise sort of “mere” threshold-crossing that the majority pooh-poohs here. In that case, the defendant, Steenberg Homes, had sold a mobile home to a neighbor of the Jacques, who were retired farmers. It determined that “the easiest route” to deliver the mobile home would be to cut across the Jacques’ land. Id. at 157. The “only alternative” was to haul the mobile home through a sharply-curved private road which was covered in seven feet of snow at the time. Id. Understandably, Steenberg saw a material advantage in “merely ... crossing] the threshold” of the Jacques’ property. The Jacques refused permission to haul the mobile home across their land, but Steen-berg did so anyway. Id. at 157-58. The jury awarded nominal damages of $1 and punitive damages of $100,000, id. at 158, and the Supreme Court of Wisconsin, upheld the award in full. Id. at 166. Not only did the jury properly award nominal damages because “[t]he law infers some damage from every direct entry upon the land of another,” id. at 160 (quoting Prosser and Keeton on Torts, § 13 (5th ed. 1984)), the jury also properly awarded punitive damages to vindicate the strong interest of individual landowners and of society in protecting private property from trespass, id. The Idaho trespass statute cited in the majority opinion is not relevant. The majority cites Idaho Code § 18-7008(9) for the proposition that only lands posted with “No Trespassing” signs can be trespassed upon under Idaho law. But while the cited statute so limits actions seeking criminal penalties for “willful and intentional ]” trespass, it does not otherwise override or eliminate common law trespass in Idaho.[10] Nor does Idaho Code § 6-202, which provides for treble damages in civil actions for “willful and intentional[ ]” trespass and also requires posted “No Trespassing” signs: [T]he Idaho statutes governing trespass only apply when the trespass is shown to have been wilful and intentional, and the wronged party seeks treble damages therefor, as authorized by Section 6-202. In all other circumstances, the common law principles relating to trespass actions apply. The court is unaware of any recent Idaho cases to the contrary, and the 1976 amendments to the statutes did nothing to alter this interpretation .... Mock v. Potlatch Corp., 786 F.Supp. 1545, 1548 (D. Idaho 1992) (citing Menasha Woodenware Co. v. Spokane Int’l. Ry., 19 Idaho 586, 115 P. 22 (1911)).[11] Thus, the “imaginations” and “affections” of Idahoans are not so different from those of greater mankind. See Blackstone, supra. Unauthorized entry upon the land of another is common-law trespass in Idaho and thus a legally cognizable harm.[12] The majority also argues, based on two out-of-circuit cases, that not all misrepresentations necessarily .vitiate consent to entry. The majority cites Desnick v. Am. Broad. Cos., Inc., 44 F.3d 1345 (7th Cir. 1995), and Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 517 (4th Cir. 1999). Both Desnick and Food Lion note, in discussing the common law of various other jurisdictions, that there is no consensus on this issue. Food Lion, Inc., 194 F.3d at 517 (“[T]he various jurisdictions and authorities in this country are not of one mind in dealing with the issue.”); Desnick, 44 F.3d at 1352-53 (noting diversity of results in entry-by-misrepresentation cases and proposing a new rule—of undisclosed origin—to reconcile them); see also Restatement (Second) of Torts § 173 cmt. b (1965) (providing that “[a] conscious misrepresentation as to the purpose for which admittance to the land is sought, may be a fraudulent misrepresentation of a material fact” which vitiates consent pursuant to Restatement (Second) of Torts § 892B). As relevant here, however, the law of Idaho is contrary 'to the Desnick and Food Lion decisions. See Beaver State Contractors, Inc., 472 P.2d at 310 (finding trespass where defendant entered and crossed the owner’s property by misrepresentation). Even if entries such as those at issue in Desnick or Food Lion (or Beaver State) neither damage the premises nor “disrupt” the owner’s activities thereon, wrongful entry is nonetheless a “legally cognizable harm” per se. Taysom, 349 P.2d at 560 (“Nominal damage ... naturally flows from a wrongful entry.”). Furthermore, there is no suggestion in either Desnick or Food Lion that the First Amendment prohibits a state court or state legislature from establishing a different rule eliminating consent to enter land when the consent is procured by fraud. Cf. Illinois, ex rel. Madigan v. Telemarketing Assocs., Inc., 538 U.S. 600, 624, 123 S.Ct. 1829, 155 L.Ed.2d 793 (2003) (“Consistent with our precedent and the First Amendment, States may maintain fraud actions when fundraisers make false or misleading representations designed to deceive donors about how their donations will be used.”); State v. Jesser, 95 Idaho 43, 501 P.2d 727, 737 n.29 (1972) (“It has long been settled that fraud vitiates the consent of the victim to the taking of his property by agreement, and that, consequently, the taking is a constructive trespass upon possession .... ”); Idaho Code § 18-2403 (prohibiting theft by deception, trick, or false pretenses). If the problem with subsection (a) is that it enacts something different from the substantive law of trespass advocated by a Seventh Circuit or Fourth Circuit panel, any suggestion that those panels have hit upon a “better rule” should be directed to the Idaho legislature. It is Idaho law that governs what constitutes valid consent for a license sufficient to avoid a trespass on Idaho land.'- Subsection (a) is also limited to lies which are likely to cause a “specific harm,” as Justice Breyer’s Alvarez concurrence would require. Justice Breyer distinguished the Stolen Valor Act, which prohibited “falsity and nothing more,” from various other statutes which prohibit certain false or deceptive communications which cause or are likely to cause a “specific harm.” Alvarez, 567 U.S. at 734-36, 132 S.Ct. 2537 (Breyer, J., concurring). For example, (1) fraud statutes require “actual injury,” (2) defamation statutes require a reputational harm, (3) intentional infliction of emotional distress liability requires an “emotional, dignitary, or privacy-related” harm, (4) statutes dealing with perjury or lying to government officials are “typically limited to circumstances where a lie is likely to ... interfer[e] with the functioning of a government department,” (5) impersonation statutes focus “may require” a showing that someone was deceived into following a course of action he would not have pursued but for the deceitful conduct, and (6) trademark infringement statutes are focused on infringement which causes confusion among consumers about the source of a product, and thereby dilutes the value of a trademark. Alvarez, 567 U.S. at ■ 734-36, 132 S.Ct. 2537 (Breyer, J., concurring). The “specific harm” requirement thus mandates that a prohibition on lies be' limited to or “focused on” lies which are “more likely” to cause a discrete and identifiable type of harm. That is, a generalized prohibition on telling lies about consumer prod-uets is overbroad, while a prohibition on lies which are likely to trick consumers into buying a product they would not otherwise buy is not. Unlike the Stolen Valor Act, subsection (a) is limited to lies which are likely to cause a specific harm: invasion of and onto land, or the harm to property owners’ right to exclude others. In fact, in this analysis, subsection (a) is even better than Justice Breyer’s trademark infringement and impersonation examples because the specific harm must occur for liability to attach, rather than just be “more likely” to occur. Conversely, when one obtains permission to enter onto the land of another,'he obtains a material gain: a license to enter. The resulting license is a legally cognizable interest or privilege. See Restatement (First) of Property § 512 (1944) (“[T]he word ‘license’ indicates the legal interest arising from a consent.”). It confers the ability to do lawfully that which the law otherwise forbids and punishes as trespass. Shultz v. Atkins, 97 Idaho 770, 554 P.2d 948, 953 (1976) (“[A]n essential element of a license ... [is] the right to use land in the possession of another.”). Take the example, suggested by the Majority’s opinion, of the teenager who lies to get a reservation at an exclusive restaurant. The majority admits that the teenager gains something (entry to the restaurant) but concludes, without explanation,[13] that “[t]his entry alone does not constitute a material gain.” No material gain to the teenager? However one defines' “material”[14] and “gain,”[15] it seems á stretch to say the teenager stands to obtain neither at the restaurant. The majority must imagine the lad served thin gruel indeed for him to have received nothing of “substance,” léaving him with a sense of not “getting something” as a result of hoodwinking the maitre d’hdtel. Furthermore, if the teenager takes a seat in the restaurant with permission procured by fraud, he commits trespass and is liable for at least nominal damages. But if he obtains consent, he is able, to gain lawful (albeit limited) use of another’s land—a discrete, legally cognizable advantage[16] that he did.not have before consent was given. If nothing else, he gains a suspension of the owner’s right to expel him from the restaurant by force. See Restatement (Second) of Torts § 77 (1965). • The majority’s restaurant analogy merely evades the crucial inquiries under Alvarez. First, “entry alone” is a legally cognizable harm under Idaho law; that is why under Idaho law aggrieved landowners, subjected to a trespass, need not prove unjust enrichment or any other form of damages. Taysom, 349 P.2d at 560. Legally cognizable harm—not some unknown quantum of physical damage or economic harm to be determined by courts ex post, on a case-by-case basis—is what Alvarez requires. Alvarez, 567 U.S. at 719, 132 S.Ct. 2537 (plurality opinion). Second, although “entry alone” may seem insignificant to the majority, it was apparently significant to‘the Beaver State contractor who took the shortcut across Ms. Green’s land. See supra at 1209-10. And in the majority’s hypothetical, it is apparently significant to restauranteurs who offer their in-demand tables to “well-known journalists” but not to journalists’ teenage sons. Indeed, the teenager does cause economic harm in the majority’s hypothetical: When he secures one of a limited number of reservations, he takes a valuable table off of the market and puts it to a perhaps economically sub-optimal use (his own). That is, unless his journalist mother has been splendid as to an allowance. Third, the majority’s hypothetical does not present a case of entry “by misrepresentation.” The maitre d’hotel must recognize that the teenager is not his famous journalist mother when the teenager arrives at the restaurant; if he seats the teenager anyway, then the restaurant consents to the entry and the teenager does not violate the Idaho statute. Finally, the majority concludes that the teenager’s lie is “pure speech.” “Nothing but speech,” yes; but a lie is seldom “pure.” Nonetheless, the Idaho statute criminalizes entries, not lies. See supra, at 1207. The majority seems to be concerned'— understandably—that the Idaho law’s punishments for such trespasses are Draconian' or unwise (“the teenager would be subject to punishment of up to one year in prison, a fine not to exceed $5,000, or both.”). But that concern has nothing to do with whether entry-by-misrepresentation inflicts a legally cognizable harm or provides a material gain—which is to say that it has nothing to do with the Alvarez analysis. That the Idaho statute may take a heavy-handed approach to punishing certain trespasses is a policy argument against the Idaho statute, and that argument should be addressed to Idaho’s legislators and voters. The misconception of the ancient right at stake—the right of an owner of real property to exclude all others from his property—is where the majority goes wrong, as our holding as to subsection (b) demonstrates. Applying Alvarez to subsection (b), the majority finds that “Obtaining an agricultural production facility’s records by misrepresentation inflicts a ‘legally cognizable harm’ by impairing an agricultural production facility owner’s ability to control who can assert dominion over, arid take possession of, his property.” Quite right. The farmer’s records are his property. So is his land his property. Subsection (a) is constitutional for precisely the same reason: Entering an agricultural production facility by misrepresentation inflicts a “legally cognizable harm” by “impairing an agricultural production facility owner’s ábility to control who can assert dominion over ... his [real] property.” There is no meaningful legal distinction between the two subsections under Alvarez, and neither is unconstitutional. I respectfully dissent. . Fraud or misrepresentation vitiates consent. Green v. Beaver State Contractors, Inc., 93 Idaho 741, 472 P.2d 307, 307 (1970) (finding trespass where defendant obtained permission to cross plaintiff’s land by misrepresentation); Restatement (Second) of Torts § 173 (1965); see also id., cmt. b ("A conscious misrepresentation as to the purpose for which admittance to the land is sought, may' be a fraudulent misrepresentation of a material fact.”). . In a society governed by the Rule of Law, exceptions to the right of the owner to exclusive possession of his land can be made by due process of law, such as court orders and official acts. . The majority cites Desnick v. Am. Broad. Cos., Inc., 44 F.3d 1345 (7th Cir. 1995), and Food Lion, Inc. v. Capital Cities/ABC, Inc., 194 F.3d 505, 517 (4th Cir. 1999). . Idaho Code § 18-7042 provides that a person commits the misdemeanor crime of “interference with agricultural production” if the person "knowingly” “(a) [i]s not employed by an agricultural production facility and enters an agricultural production facility by force, threat, misrepresentation, or trespass” (emphasis added). . In Alvarez, the Supreme Court explicitly distinguished cases of "defamation, fraud, or some other legally cognizable harm associated with a false statement” from cases that confront "a measure, like the Stolen Valor Act, that targets falsity and nothing more.” 567 U.S. at 719, 132 S.Ct. 2537 (emphasis added). . "One who intentionally enters land in the possession of another is subject to liability to the possessor for a trespass, although his presence on the land causes no harm to the land, its possessor, or to any thing or person in whose security the possessor has a legally protected interest.” Restatement (Second) of Torts § 163 (1965) (emphasis added). The term "enters land” is defined "to include, not only coming upon land, but also remaining on it, and, in addition, to include the presence upon the land of a third person or thing which the actor has caused to be or to remain there.” Id. § 158. . For example, in Idaho "[tjheft includes a wrongful taking, obtaining or withholding of another's property ... committed ... [b]y deception ... [or] [b]y conduct heretofore defined or known as ... common law larceny by trick .... [or] obtaining property, money or labor under false pretenses.” Idaho Code § 18-2403; see also 18 U.S.C. § 1708 (“Whoever ... by fraud or deception obtains ... from or out of any mail, post office, or station thereof, letter box, mail receptacle ... or other authorized depository ... any article or thing contained therein ... [s]hall be fined under this title or imprisoned not more than five years, or both.”). .In Pickup, the plaintiffs brought a First Amendment challenge to California Senate Bill 1172 (“SB 1172”), which banned state-licensed mental health providers from engaging in "sexual orientation change efforts” with patients under 18 years of age. 740 F.3d at 1221. The district court granted a preliminary injunction enjoining enforcement of the law and California appealed. Id. at 1222. This court engaged in plenary review, id., upheld SB 1172, id. at 1236, and reversed the grant of the preliminary injunction, id. The panel found that SB 1172 regulated professional conduct, rather than speech, by banning a certain form of treatment, and so was “subject to deferential review just as are other regulations of the practice of medicine.” Id. at 1229-31. . In Cardigan, the petitioner, the Nevada Commission on Ethics, investigated respondent Carrigan under Nevada’s "Ethics in Government" law, which required public officials to recuse themselves from voting on or advocating a vote on matters in which a reasonable person would be materially affected by their private interests. 564 U.S. at 119-20, 131 S.Ct. .2343. The Commission concluded that Carrigan violated the law by voting to approve a hotel/casino project in which his campaign manager was involved. Id. at 120, 131 S.Ct. 2343. The Nevada Supreme Court found the ethics law overbroad, and the U.S. Supreme Court granted certiorari. Id. at 121, 131 S.Ct. 2343. The Court held that a legislator's vote is "nonsymbolic conduct” and reversed. Id. at 127, 129, 131 S.Ct. 2343. "[T]he act, of voting symbolizes nothing. It discloses, to be sure, that the legislator wishes (for whatever reason) that the proposition on the floor be- adopted, just as a physical assault discloses that the attacker dislikes the victim. But neither ... is an act of communication.” Id. at 126-27, 131 S.Ct. 2343. . “The common law of England, so far as it is not repugnant to, or inconsistent with, the constitution or laws of the United States, in all cases not provided for in these compiled laws, is the rule of decision in all courts of this state.” Idaho Code § 73-116. “[C]hanges in the common law by the adoption of a statute may not be presumed, nor may such changes be accomplished by legislation of doubtful implication.” Indus. Indem. Co. v. Columbia Basin Steel & Iron Inc., 93 Idaho 719, 723, 471 P.2d 574 (1970), . In Menasha, the plaintiff alleged that the defendant went on its lands and cut and removed timber. 115 P. at 23. The trial court awarded treble damages and the defendant appealed. Id. at 24. The Supreme Court of Idaho reversed the award of statutory treble damages. Id. at 24-25. The court read a willfulness requirement into the statute and reversed the award because there was no allegation that the trespass was willful. Id. at 24-25. In so doing, however, the court noted that the complaint was "good as an action at common law, entitling the plaintiff to his actual damage,” but simply did not meet the statutory requirements for trebled damages. Id. at 25. Rather, the court concluded that "the damages recoverable at common law would afford an adequate reparation.” Id. The court therefore reduced the judgment to provide only actual damages and affirmed the judgment, so modified. Id. .Nowhere does Alvarez hold that a “legally cognizable harm” must also be a crime. In fact, Alvarez points to classic common law injuries—“defamation,” “fraud,” and "invasion of privacy”—as examples of “legally cognizable harms.” 567 U.S. at 719, 132 S.Ct. 2537. . Because the majority does not explain how it reaches this conclusion, I assume it is my colleagues' own appraisal of the restaurant's menu. . Material: "1. of matter; of substance ... ’ physical: a material objéct ... 2. a, of the body or bodily needs, satisfactions ... corporeal .... ” MATERIAL, Webster's New World College Dictionary (5th ed. 2014). . Gain: "1. An increase; addition ... 2. the act of getting something GAIN, Webster's New World College Dictionary (5th ed. 2014). .Furthermore, as an empirical matter, it is not self-evidently true that interfering only with the right to exclude does not appropriate anything of material value. See Jonathan Klick & Gideon Parchomovsky, The Value of the Right to Exclude: An Empirical Assessment, 165 U. Pa. L. Rev. 917 (2017) (finding, based on an empirical analysis of the effect of legislation that recognized a '“right to roam” in England and Wales on.property values, that “even so-called slight intrusions on owners' exclusion right in favor of more public access ... come at a real cost to owners”).